DOROTHEA CURRY, Respondent, v ROBERT MOSER et al., Appellants.

Second Department, September 20, 1982

1

APPEARANCES OF COUNSEL

*J. Robert Morris* (*Michael Majewski* and *Joseph D. Ahearn* of counsel), for Catherine Cleary, appellant.

*Howard S. Kass, P.C.,* for Robert Moser and others, appellants.

*Siben & Siben* (*Maxwell D. Weinstein* of counsel), for respondent.

OPINION OF THE COURT

BROWN, J.

On this appeal we are asked to determine, *inter alia,* when and under what circumstances the failure of a passenger to wear an available seat belt may be considered with respect to the issue of liability. We hold that, under the unique facts of this case and contrary to the general rule announced in *Spier v Barker* (35 NY2d 444), the defendants should have been permitted to raise the plaintiff's failure to wear her seat belt as bearing on the question of liability. And further, we conclude that the circumstances of the accident herein justify a joint trial on the combined issues of liability and damages.

The facts developed during trial indicate that on the morning of January 16, 1978, plaintiff Dorothea Curry, defendant Joan Moser and defendant Catherine Cleary (all of whom were Internal Revenue Service employees) were traveling to work. Ms. Curry, who had been car pooling with Ms. Moser for more than a year, was riding in the front passenger seat of the Moser vehicle. She sat sideways in her seat, resting her left arm on the back of the seat while she conversed with another passenger who was in the rear seat. She was not wearing the seat belt with which the vehicle was equipped. Ms. Cleary was traveling in her own car behind the Moser vehicle.

En route from plaintiff's home to the IRS offices, the Moser vehicle executed several left- and right-hand turns without mishap before reaching the intersection of Sunrise Highway and Waverly Avenue in Patchogue. Both of these thoroughfares have two lanes of traffic in each direction. The Moser vehicle, which had been traveling in an easterly direction on Sunrise Highway, was the second or third

vehicle to come to a stop in the left-turn lane at the traffic signal at Waverly Avenue. The Cleary vehicle was immediately behind it.

When the light turned green, the cars negotiated the left turn onto Waverly Avenue. The Moser vehicle turned narrowly into the left northbound lane, while the Cleary vehicle made a wider turn into the right northbound lane. Somehow during the turn, the front passenger door of the Moser vehicle opened and plaintiff fell out onto the roadway. She landed directly in the path of the Cleary vehicle and was struck by it. According to plaintiff, she did not lean on the door at any time during the trip and she touched neither the door nor any other interior portion of the car as she fell out.

There was testimony during the trial that earlier on the morning of the accident plaintiff had had some difficulty opening the front passenger door. According to plaintiff, when Ms. Moser arrived to pick her up that morning, the door would not open when she pulled on the handle. She testified that Ms. Moser leaned over and attempted to open the door from inside by releasing the lever and pushing on the door. Ms. Moser, on the other hand, stated that she unlocked the door by pulling up on the button but denied touching the release lever. Eventually, she got out of the car and plaintiff entered on the driver's side and slid over to the passenger seat. After entering, plaintiff pushed down the locking button.

Prior to the commencement of the trial, an application was made by the defendants to permit the introduction of the seat belt issue during the liability phase of the trial on the ground that the failure to wear the seat belt was a proximate cause of plaintiff's injuries. The court denied the application.

At the conclusion of the liability phase of the trial, and without having heard any testimony regarding plaintiff's failure to wear her seat belt, the jury returned a verdict finding that all parties (plaintiff, defendant Joan Moser and defendant Catherine Cleary) were negligent and that such negligence was the proximate cause of the accident. In apportioning liability, the jury found that plaintiff and

defendant Joan Moser were each 25% liable, while defendant Catherine Cleary was 50% liable.

During the ensuing portion of the trial with regard to the issue of damages, several expert witnesses testified on behalf of the defendants that if plaintiff had been wearing a seat belt she would not have fallen from the vehicle and would not have sustained any injuries. In addition, one of the experts testified that he had examined the seat belts in the Moser vehicle and found them to be in working order. It was during consideration of the damages issue that plaintiff, as noted above, admitted that she was not wearing a seat belt. She also testified that she was not injured while she was in the vehicle and felt no injury before she struck the ground. Furthermore, she repeated her earlier testimony to the effect that she fell cleanly out of the vehicle without coming into contact with any parts thereof.

The jury determined that plaintiff had been damaged in the amount of $50,000. The jury also found, in response to an interrogatory, that 100% of plaintiff's injuries were sustained as a result of her failure to wear a seat belt. However, in mitigating the damage award for plaintiff's failure to wear a seat belt, the jury reduced the $50,000 award by only $15,000. Finally, the jury further reduced the award by 25% based upon the finding of comparative negligence.

The jury's resolution of the damage issue is obviously inconsistent and reflects an apparent misunderstanding of the trial court's instructions. Accordingly, a new trial with respect to the damage issue is clearly required (CPLR 4111, subd [c]). But, further, for the reasons hereinafter set forth, it is our opinion that a new trial is necessary with respect to the liability issue as well, and that the facts and circumstances here present make it appropriate that both of said issues be determined at a unified trial.

In *Spier v Barker* (35 NY2d 444, 449-450, *supra*), the Court of Appeals addressed, as a matter of first impression, the question of the effect of an individual's failure to wear a seat belt upon his right of recovery in an action for personal injuries incurred in a motor vehicle accident. The court held that: "nonuse of an available seat belt, and

expert testimony in regard thereto, is a factor which the jury may consider, in light of all the other facts received in evidence, in arriving at its determination as to whether the plaintiff has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain". The court specifically stated, however, that the use of such evidence should be limited to the jury's determination of damages and should not be considered on the issue of liability. Moreover, the court noted that the defendant has the burden of pleading and proving by competent evidence "a causal connection between the plaintiff's nonuse of an available seat belt and the injuries and damages sustained" (*supra,* p 450).

In reaching its result, the court reviewed the three basic approaches to the so-called seat belt defense which had been developed in other jurisdictions: (1) that plaintiff's nonuse of an available seat belt constitutes negligence per se; (2) that nonuse of an available seat belt may indicate a failure to comply with the standard of conduct of a reasonable man and may amount to common-law contributory negligence; and (3) that nonuse of an available seat belt constitutes a breach of the plaintiff's duty to mitigate his damages (see Comment, The Seat Belt Defense: A New Approach, 38 Fordham L Rev 94; Kircher, Seat Belt Defense — State of the Law, 53 Marq L Rev 172). Judge GABRIELLI, writing for a unanimous court, rejected the first two approaches and adopted the third as the proper method for considering the plaintiff's failure to wear a seat belt. He reasoned as follows (pp 451-452):

"As Prosser has indicated, the plaintiff's duty to mitigate his damages is equivalent to the doctrine of avoidable consequences, which precludes recovery for any damages which could have been eliminated by reasonable conduct on the part of the plaintiff (Prosser, Torts [4th ed.], § 65, pp. 442 [*sic*]-424). Traditionally both of these concepts have been applied only to postaccident conduct, such as a plaintiff's failure to obtain medical treatment after he has sustained an injury. To do otherwise, it has been argued, would impose a preaccident obligation upon the plaintiff and would deny him the right to assume the due care of others (Kleist, Seat Belt Defense — An Exercise in Sophis-

try, 18 Hastings L.J. 613, 616). We concede that the opportunity to mitigate damages prior to the occurrence of an accident does not ordinarily arise, and that the chronological distinction, on which the concept of mitigation damages rests, is justified in most cases. However, in our opinion, the seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages *prior* to the accident. Highway safety has become a national concern; we are told to drive defensively and to 'watch out for the other driver'. When an automobile occupant may readily protect himself, at least partially, from the consequences of a collision, we think that the burden of buckling an available seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity.

"At this juncture, there can be no doubt whatsoever as to the efficiency of the automobile seat belt in preventing injuries. Simply stated, '[t]he seat belt, properly installed *and properly worn,* still offers the single best protection available to the automotive occupant exposed to an impact.' (Snyder, Seat Belt as a Cause of Injury, 53 Marq. L. Rev. 211). Furthermore, though it has been repeatedly suggested that the seat belt itself causes injury, to date the device has never been shown to worsen an injury, but, on the contrary, has prevented more serious ones (p. 213). The studies on the subject overwhelmingly indicate that the seat belt fulfills its primary purpose of restraining the automobile occupant during and immediately after the initial impact; in so doing, it significantly reduces the likelihood of ejection and frequently prevents 'the second collision' of the occupant with the interior portion of the vehicle."

This approach has since been followed in numerous cases. (See *Karras v County of Westchester,* 71 AD2d 878 [2d Dept]; *Latta v Siefke,* 60 AD2d 991 [4th Dept]; *Frozzitta v Incorporated Vil. of Freeport,* 57 AD2d 827 [2d Dept]; *Uribe v Armstrong Rubber & Tire Co.,* 55 AD2d 869 [1st Dept]; *Baker v Hlavachek,* 51 AD2d 739 [2d Dept]; see, also, Note, Spier v. Barker, 3 Hofstra L Rev 883.)

Nevertheless, we hold that, for the reasons hereinafter stated, under the somewhat unique facts presented herein, the second of the two approaches considered and rejected by the *Spier* court, i.e., that a plaintiff's failure to wear a seat belt may be considered as evidence of contributory negligence, has application to the case at bar.*

In rejecting the contributory negligence approach, the *Spier* court stated (p 451): "Likewise, we do not subscribe to the holdings of those cases in which the plaintiff's failure to fasten his seat belt may be determined by the jury to constitute contributory negligence as a matter of common law (*Bentzler* v. *Braun* [34 Wis 2d 362], *supra; Sams* v. *Sams*, 247 S. C. 467; *Mays* v. *Dealers Tr.*, 441 F. 2d 1344). In our view, the doctrine of contributory negligence is applicable only if the plaintiff's failure to exercise due care causes, in whole or in part, *the accident*, rather than when it merely exacerbates or enhances the severity of his injuries (*Dillon* v. *Humphreys*, 56 Misc 2d 211, 214; *Abrams* v. *Woods*, 64 Misc 2d 1093, 1094; *Noth* v. *Scheurer*, 285 F. Supp. 81, 85). That being the case, holding a nonuser contributorily negligent would be improper since it would impose liability upon the plaintiff for all his injuries though use of a seat belt might have prevented none or only a portion of them." The court was careful to note, however, in a footnote, that *"[n]ot involved in this case, and not considered, is an issue in which the failure to wear a seat belt is an alleged cause of the accident"* (35 NY2d 444, 451, n 3, *supra;* emphasis added).

Under the facts at bar, it is questionable whether there would have been any accident at all had plaintiff been wearing the harness-type seat belt with which the vehicle was equipped. While the unexplained opening of the door may well have been a cause of the accident, had plaintiff been sitting properly in her seat with the seat belt fastened, this cause might have had no effect in terms of the plaintiff having sustained any injuries. This case is distinguishable from the usual case in which the seat belt prevents ejection or a "second collision" following the ini-

---

\* Not considered on this appeal is the first approach (i.e., consideration of the failure to wear a seat belt as being violative of section 383 of the Vehicle and Traffic Law, and therefore negligence per se).

tial collision between the vehicle and another vehicle or object (cf. *Caiazzo v Volkswagenwerk AG.,* 647 F2d 241). Here there was no initial collision which might have caused injuries. Rather, it was the combined causes of the opening of the door and the failure to wear the seat belt which led to the plaintiff's injuries.

The instant case would thus appear to present the very situation anticipated by the *Spier* court in its footnote, in which the plaintiff's failure to wear a seat belt is alleged to be a cause of the accident (*Spier v Barker, supra,* p 451, n 3). Whether such conduct, which is alleged to have been a cause of the accident, constitutes contributory negligence as a matter of common law (see *Bentzler v Braun,* 34 Wis 2d 362) presents a question of fact for the jury to be resolved in the determination of the issue of liability (see *MacDowall v Koehring Basic Constr. Equip.,* 49 NY2d 824).

We note that unlike *Spier* (*supra*), which was decided under a state of law which absolutely barred recovery by a contributorily negligent plaintiff, the cause of action in the instant case accrued after September 1, 1975 and, accordingly, is governed by the comparative negligence doctrine embodied in CPLR article 14-A (CPLR 1411 *et seq.*).

Under CPLR 1411, the damages recoverable by a contributorily negligent plaintiff are to be diminished in the proportion which such contributory negligence or other culpable conduct bears to the culpable conduct which caused the accident.

This principle was properly applied in this case insofar as the jury reduced plaintiff's damages by 25% based upon its finding that her negligence was a 25% cause of the accident. That finding of negligence, however, was made without considering whether plaintiff's failure to wear a seat belt constituted contributory negligence.

Accordingly, on the retrial of this matter, the jury must determine not only whether plaintiff was contributorily negligent, but also whether the failure to wear a seat belt itself constituted contributory negligence. This latter issue should be submitted in a special interrogatory. In the event the jury determines that plaintiff's failure to wear a seat belt did not constitute contributory negligence (although it

may still find her to be guilty of other culpable conduct, i.e., failing to determine whether the passenger door was properly secured), then under the general rule in *Spier* such conduct may still be considered in mitigation of damages. Of course, if the jury determines that plaintiff's failure to wear a seat belt was contributory negligence then, pursuant to CPLR article 14-A, it must consider such failure in apportioning liability. However, that conduct may not again be considered in mitigation of her damages. This would amount to a double reduction of plaintiff's damages based on the same conduct, which would be entirely inappropriate.

This court's rules mandate that except for "exceptional circumstances" there shall be bifurcated trials in all personal injury actions (22 NYCRR 699.14 [a]). Such circumstances are, in our view, here present and a unified trial is ordered. The issues of liability and damages are so intertwined under the unique facts in this case that justice will be better served by having a unified trial (see *Jacobs v Broidy,* 88 AD2d 904).

We have considered the other contentions raised on the appeal and find them to be without merit.

THOMPSON, J. P., RUBIN and BOYERS, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered May 5, 1981, reversed, on the law, and new trial granted on the combined issues of liability and damages, with costs to abide the event.