■ EDWARD SCHWARTZMAN, Appellant, v WALTER WEINTRAUB et al., Respondents, et al., Defendants. — Judgment of the Supreme Court, New York County (A. Blyn, J.), entered November 29, 1983, after Bench trial, which dismissed the plaintiff's complaint, is reversed, on the law and facts, to the extent appealed from, the first cause of action of the complaint is reinstated, judgment granted to plaintiff on said first cause of action and the matter remanded for a hearing as to damages, with costs and disbursements of this appeal payable to plaintiff-appellant. ¶ Defendant Weintraub is in the business of telephone research and solicitation for commercial accounts. He owned and operated defendant WW National Telephone Advertising, Inc., a commercial survey business. Apparently, during 1968, plaintiff Schwartzman approached Weintraub, who had been a personal friend, with the idea of doing political survey and solicitation work for him on the Nathan Strauss and Frederick Richmond congressional primary campaigns. Weintraub agreed, and on April 4, 1968 the parties entered into an agreement which provided that in exchange for plaintiff's part-time technical and consulting services on the two congressional campaigns, he would receive from Weintraub one half of the net campaign profits. Further, defendant Weintraub agreed to maintain the books and records, which plaintiff would have the right to review. ¶ Eleven days later, on April 15, 1968, the parties entered into another written agreement which provided the following: "To Whom It May Concern: This is an agreement between Edward Schwartzman (575 Grand Street, New York) and Walter Weintraub (Yonkers, N. Y.) relating to income generated by political surveys and solicitations by Nat'l Telephone Advertising Co. Net income generated by this activity is to be equally divided between Schwartzman and Weintraub. Mr. Schwartzman's contribution to the Strauss and Richmond campaigns occasioned by this agreement/Accounts may be reviewed if required by Mr. Schwartzman or his attorney or accountant." ¶ During 1968, plaintiff worked on the two congressional campaigns and also on another Congressional primary campaign. For these campaigns, plaintiff testified at trial that he received what defendant informed him was 50% of the net income from each campaign. ¶ Plaintiff and defendant again worked together during the spring and fall of 1970 on the Senate primary and general election campaigns, respectively, of Richard Ottinger. At trial, plaintiff testified that he was paid

by Weintraub $16,000 for his work in the primary campaign and $13,000 for his work in the general election campaign, for a total of $29,000. Plaintiff also testified that he was informed by Weintraub that the $29,000 constituted one half of the net campaign income. ¶ At trial, Weintraub testified that the net profit made from the Ottinger campaigns was substantially higher than $58,000 but confirmed that plaintiff had received only $29,000 (one half of $58,000). Weintraub testified that he had not paid plaintiff 50% of the profits of the Ottinger campaign and that the net profits for the Ottinger primary and election were $80,000 to $100,000 each. ¶ In early 1972, plaintiff worked with defendant on the McGovern New Hampshire Presidential primary campaign. Thereafter, the parties had a "falling out" and their relationship deteriorated. On or about April 23, 1972, the two men apparently decided to end their business relationship. Plaintiff testified that at that time he wanted an accounting. Shortly thereafter, on or about May 7, 1972, plaintiff sent a letter to defendant. In this letter, plaintiff indicated that after thinking about Weintraub's statement, " 'Let's go our separate ways,' " he concluded that their business relationship should be terminated. Further, "To end it cleanly and without rancor," plaintiff requested that defendant make arrangements for plaintiff's accountant to examine the business records. Specifically, plaintiff wrote, "If you have overpaid me, I wish to pay you what I owe, just as I know you would wish to pay me if anything is owing to me in our business relationship *from April 1968 to April 23, 1972*" (emphasis added). After apparently not receiving a response from defendant, plaintiff again demanded a final accounting, in a letter dated May 15, 1972. ¶ Several months after this last communication, on or about August 9, 1972, plaintiff served his first summons and complaint upon defendants Weintraub and WW National Telephone Advertising, Inc. On or about November 13, 1976, plaintiff served a fourth amended complaint, applicable to the instant appeal. This final complaint asserted three causes of action. First, plaintiff alleged breach of contract against Weintraub and the five corporate defendants of the April, 1968 agreement, *commencing on or about April 23, 1972*. Second and third, plaintiff alleged fraud and conspiracy to defraud, respectively, for false and fraudulent misrepresentations made to plaintiff that defendants had terminated their political business. ¶ Subsequent to the nonjury trial conducted between January 26, 1983 and February 1, 1983, but prior to the court's decision, plaintiff moved orally to "conform the pleadings to the proof" pursuant to CPLR 3025 (subd [c]) and to include an amendment to plaintiff's first cause of action to add an additional breach by the defendants for their failure to pay plaintiff one half of the net income of the Ottinger campaign. Defendant objected to the amendment, asserting that plaintiff should not be permitted to assert a complete and new cause of action. The trial court refused to permit amendment of the complaint finding, *inter alia,* that the breach in connection with the 1970 Ottinger campaigns was "within the thrust of the first cause of action" and that the first cause "encompasses it." In its decision, however, the court dismissed the complaint in its entirety and directed judgment in favor of the defendants. It found that the April 15, 1968 agreement made no provision for its duration and thus could be terminated at will. Further, the court found that Weintraub in April or May of 1972, by stating "Let's go our separate ways," terminated the agreement. Thus, the court found that the second cause of action for fraud and the third cause of action for conspiracy to defraud must fall since the defendants had no obligation for any future business relationship once the agreement was terminated. Finally, the court in refusing to find a breach of contract noted the following: "Even though not raised in the pleading (demand for an accounting) the court finds that plaintiff by waiting until the agreement had been terminated four years after its inception and two years

after the only campaign (Ottinger) which possibly might have been relevant to such a demand has convinced this court that he had accepted the payments made in the Ottinger campaign as payment in full of his half of the net profits of that campaign. Thus there is no basis for an accounting." ¶ Although we agree that Trial Term correctly dismissed the second and third causes of action, we find that its dismissal of the first cause of action was in error. ¶ As noted, the court considered the issue of the 1970 Ottinger campaign to be within the thrust of and encompassed within the first cause of action. Even if this interpretation of the court's ruling is incorrect, Trial Term should have permitted the plaintiff to conform the pleadings to the proof. An application to amend pursuant to CPLR 3025 (subd [c]) is addressed to the sound discretion of the court and should be determined in the same manner and by weighing the same considerations as upon a motion to amend pursuant to CPLR 3025 (subd [b]) (*Murray v City of New York,* 43 NY2d 400). CPLR 3025 (subd [b]) provides that "[a] party may amend his pleading * * * at any time by leave of court" and that "[l]eave shall be freely given upon such terms as may be just". Where a trial court incorrectly denied such a motion, leave to amend to conform the pleadings to the proof should be granted on appellate review (see *Murray v City of New York, supra,* pp 405-406). ¶ It is undisputed that plaintiff received only $29,000 in connection with the 1970 campaign, which is less than one half of the net profits of such campaign by defendant Weintraub's own trial admissions. Defendant testified that the approximate total profit he received from the primary and general election was $80,000 to $100,000 each. ¶ The trial court erred when it found that plaintiff had accepted the $29,000 as payment in full since the record indicates that it was not until trial that the plaintiff actually learned he was owed more. The trial testimony indicates that up until the time of trial, plaintiff believed and was informed by defendant that $29,000 represented one half of the net profit of the 1970 campaign. ¶ Moreover, the record establishes that in May of 1972, plaintiff made inquiry in writing as to the actual net income when he demanded to look at the records from 1968 up to that time. In addition, after litigation commenced, plaintiff obtained court orders directing defendants to produce all net income records from 1968 on. Further, the record discloses that in pretrial deposition, defendant denied that he knew what the net income of the Ottinger campaigns was and admitted the actual net income only at trial. Clearly, therefore, plaintiff did not "accept" the $29,000 as "payment in full" as found by the trial court. ¶ Defendant Weintraub's failure to pay plaintiff one half of the net income from the Ottinger campaigns, and his refusal to permit plaintiff to review the records, were plainly breaches of the agreement of April 15, 1968. Concur — Asch, J. P., Bloom, Lynch and Kassal, JJ.