MADELINE DiMAURO, Appellant-Respondent, v METROPOLITAN SUBURBAN BUS AUTHORITY et al., Defendants Third-Party Plaintiffs-Respondents. DONNA FILACHOWSKI, Third-Party Defendant Respondent-Appellant, et al., Third-Party Defendant.

Second Department, December 31, 1984

## APPEARANCES OF COUNSEL

*Harvey A. Levine, P. C.,* for appellant-respondent.

*Martin & Fallon (Richard C. Mulle* of counsel), for third-party defendant respondent-appellant.

*Curtis Hart & Zaklukiewicz (David Holmes* of counsel), for defendants third-party plaintiffs-respondents.

*Benjamin Purvin (Charles F. Brady* of counsel), for third-party defendant. (No brief filed.)

## OPINION OF THE COURT

GIBBONS, J. P.

In this personal injury action, the plaintiff and third-party defendant Donna Filachowski have both appealed from a judgment of the Supreme Court, Nassau County, which, upon a jury verdict, *inter alia,* determined the plaintiff to have been 30% responsible for the injuries which she sustained in an automobile accident while riding as a passenger in third-party defendant Filachowski's vehicle and adjudged Filachowski to have been 50% responsible for such injuries, is in favor of plaintiff and against the defendants Metropolitan Suburban Bus Authority (hereinafter MSBA) and Stanley R. Bell in the sum of $5,000 and against the third-party defendant Filachowski in the sum of $12,500. In our view, the judgment must be reversed and the matter remitted for a new trial in accordance herewith.[1]

On or about December 16, 1980, the plaintiff Madeline Di Mauro was riding as a passenger in a 1979 Volkswagen Rabbit automobile owned and operated by her daughter, third-party defendant Donna Filachowski, when they were struck in the rear by a bus owned by the MSBA and operated by defendant

---

1. This case must be retried because of errors, discussed below, which involve the jury's apportionment of the fault which caused plaintiff's injuries. We note, however, that although plaintiff did not amend her complaint to assert a cause of action against the third-party defendant Filachowski, the judgment appealed from is in favor of plaintiff and against the prime defendants and Filachowski. Such a "net" judgment is erroneous (see *Nicholas v Consolidated Edison Co.,* 100 AD2d 957, 958).

Stanley R. Bell. As a result of the injuries sustained in said collision, a personal injury action was commenced by the plaintiff against the MSBA and Bell, and in June, 1981, the defendants in that action commenced a third-party action against Filachowski and the owner-operator of the third vehicle involved, Demetrious Papazis.[2] At trial, it was established, *inter alia,* that the plaintiff was riding in the right front passenger's seat of her daughter's vehicle at the time of the collision, and that she was not wearing a seat belt because the device was not working. It was also established that both the plaintiff and the third-party defendant were aware of the fact that the seat belt would not fasten, and that the situation had persisted for at least two days. It appears from the record that the remaining three seat belts were working, however, and since there was only one rear seat passenger, there was an alternative belted position available for the plaintiff's use. Expert testimony adduced at trial tended to establish that the plaintiff's injuries would not have occurred had she been wearing a seat belt, and, in addition to substantiating the defendants' "seat belt" defense, the foregoing was offered in support of the defendants' contention in the third-party action that the plaintiff's daughter should be subjected to liability for those injuries attributable to her failure to provide her mother with an operable seat belt.

On appeal, the third-party defendant alleges as error Trial Term's acceptance of this testimony in the context of the third-party action, as well as its charge, *inter alia,* that the third-party defendant could be subjected to liability for so much of the plaintiff's injuries as were proximately caused by her failure to provide the plaintiff with a working seat belt. She maintains, *inter alia,* that the foregoing theory of liability was not asserted in the third-party complaint, which is predicated exclusively upon her alleged carelessness and negligence in the manner of operation of her vehicle. In addition, Filachowski contends that it was error for the court to have denied her request for an adjournment for the purpose of securing a "seat belt" expert when the third-party plaintiffs were permitted to interpose this issue just prior to the commencement of trial.

In opposition, the defendants maintain, *inter alia,* that the pleadings in question articulated all of the issues which were ultimately raised at the trial, including the alleged negligent failure to provide the plaintiff with an operable seat belt. With

---

**2.** The third-party action against Papazis was dismissed during trial and is not in issue on this appeal. Accordingly, all future references to the third-party defendant should be deemed to exclude Papazis and to refer exclusively to Filachowski.

this final contention we cannot agree, for in our view the underlying pleadings were insufficient to notify the third-party defendant that her alleged negligence in failing to provide the plaintiff with a properly functioning seat belt would be a matter in issue.

Pursuant to statute, the statements contained in a pleading are required to be "sufficiently particular to give the court and [the] parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved", as well as "the material elements of each cause of action or defense" (CPLR 3013). Thus, the essential facts required to give notice of a claim or defense must generally appear on the face of the pleading (see *Greschler v Greschler,* 71 AD2d 322, mod on other grounds 51 NY2d 368; *Foley v D'Agostino,* 21 AD2d 60), and conclusory allegations will not suffice (see *Greschler v Greschler, supra; Taylor v State of New York,* 36 AD2d 878).

Applying the foregoing considerations to the case at bar, it becomes readily apparent that the third-party complaint is wholly devoid of any factual allegation regarding the defective seat belt, the third-party defendant's knowledge thereof, or the aggravation of injuries allegedly sustained as a result of the plaintiff's failure to wear a proper safety restraint. Moreover, there is similarly no allegation of negligence addressed to the failure of the third-party defendant to provide her passenger with an operable seat belt, as the pleading simply alleges that: "the injuries and damages sustained by the plaintiff, if any, were the [proximate] result of the negligent and careless manner in which [the] third-party [defendant] *operated"* (emphasis added) her motor vehicle. Framed in this way, the third-party complaint failed in its essential purpose to focus the court's and the parties' attention on the principal facts and issues to be decided at the trial (see *Greschler v Greschler, supra; Foley v D'Agostino, supra*) if one of those issues was intended to be the third-party defendant's "negligence" in failing to repair or replace the defective seat belt. In this regard, we reject the defendants' contention that so much of the third-party complaint as alleged negligence in the "manner in which [Filachowski] *operated"* (emphasis added) her vehicle served to adequately raise the issue of the defective seat belt, since the word "operated" cannot fairly be said to encompass, for the purpose of giving notice, the question of maintaining the seat belts in proper working order. Unaccompanied by any factual allegation of a defective seat belt, the third-party complaint cannot, therefore, be seen to provide adequate notice of the need to defend on this issue.

■ Although the liberal construction of pleadings is the general rule under the CPLR (CPLR 3026), it is nevertheless settled that a court cannot knowingly disregard a defect which is prejudicial to an opposing party (*Meltzer v Klein,* 29 AD2d 548). Prejudice has been said to arise, e.g., where a defendant "has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position" (*Loomis v Civetta Corinno Constr. Corp.,* 54 NY2d 18, 23, mot for rearg den 55 NY2d 801). We find that in the instant case such prejudice existed because the absence of any notice that the lack of an operable seat belt would be an issue in the third-party action caused the third-party defendant's failure to enlist the services of a seat belt expert. Such a witness was indispensible to the presentation of a successful defense, since only an expert could refute or impugn the testimony of the third-party plaintiffs' expert to the effect that the plaintiff's injuries would have been substantially reduced or eliminated by the use of a properly fastened seat belt.

Moreover, the afore-mentioned variance between the trial evidence and the third-party complaint cannot, in our view, be remedied through the mechanism of a *sua sponte* amendment as has been suggested by the third-party plaintiffs. The amendment of pleadings to conform to the proof adduced at trial is governed by the same rules which regulate the granting of leave for the amendment of pleadings generally (CPLR 3025, subds [b], [c]; *Murray v City of New York,* 43 NY2d 400; *Schwartzman v Weintraub,* 100 AD2d 818, 820), and, thus, in the absence of prejudice, may be permitted at any time during or even after the trial (*Murray v City of New York, supra,* p 405). Here, however, the existence of prejudice to the third-party defendant is apparent, and is directly traceable to the defendants third-party plaintiffs' failure to plead sufficient facts in the third-party complaint to give Mrs. Filachowski notice that her failure to provide an operable seat belt would be asserted against her at the trial. Accordingly, the amendment is barred (see *Fulford v Baker Perkins, Inc.,* 100 AD2d 861). While a proposed amendment which merely changes the theory of recovery without adding any new facts generally would not be regarded as prejudicial (see, e.g., *Eng v Di Carlo,* 79 AD2d 1018), the same cannot be said of the interjection, at trial, of a new or alternate theory supported by previously unpleaded facts (cf. *Forman v Davidson,* 74 AD2d 505).

In this regard, we cannot accept the implied contention that knowledge of the fact of the malfunctioning seat belt precludes any claim of prejudice, for while the Appellate Division, Third

Department, in *Rife v Union Coll.* (30 AD2d 504, 505), did indeed remark that "[o]ne cannot successfully claim prejudice when he has had full knowledge of all the facts and an opportunity to present his theory of the case is allowed", the court then went on to explain that service of an amended complaint on the eve of trial could not be deemed prejudicial where no new facts are asserted and the amendment "merely set[s] forth an additional theory of the law based upon the *facts formerly alleged*" (*supra,* p 505; emphasis supplied). Importantly, the additional theory of liability asserted in *Rife* had been fully set forth in the applicable bills of particulars and did not involve any previously unpleaded facts (*Rife v Union Coll., supra,* pp 504-505). The case at bar is readily distinguishable, as the third-party plaintiffs failed to supply a bill of particulars in the third-party action until after the trial had commenced, and never included any allegations regarding the allegedly defective seat belt in the third-party complaint. Although the third-party defendant and her attorney may actually have been aware of the defective seat belt from discovery proceedings and the like, this abstract "knowledge" cannot be said to preclude a claim of prejudice where, as here, a party has been directed to proceed to trial on a theory of liability (i.e., the absence of an operable seat belt) of which she had no prior notice (cf. *Brock v Bua,* 83 AD2d 61, 64-65). An adversary cannot, in all fairness, be expected to proceed to trial on every conceivable theory of liability arising out of an unpleaded state of facts of which he acquires personal knowledge, even though the afore-mentioned state of facts is revealed during pretrial proceedings (cf. *Forman v Davidson,* 74 AD2d 505, *supra*).

In addition, the error in permitting the third-party plaintiffs to interpose the defective seat belt issue in the third-party action on the eve of trial was exacerbated in this case by the refusal to grant the third-party defendant's request for an adjournment, *inter alia,* to procure the services of a seat belt expert. As Justice Titone of this court aptly noted in *Balogh v H.R.B. Caterers* (88 AD2d 136, 141): "It is an abuse of discretion to deny a continuance where the application complies with every requirement of the law and is not made merely for delay, where the evidence is material and where the need for a continuance does not result from the failure to exercise due diligence (cf. CJS, Continuances, § 46; *Ludlam v Riverhead Bond & Mtge. Corp.,* 244 App Div 113). Liberality should be exercised in granting postponements or continuances of trials to obtain material evidence and to prevent miscarriages of justice (cf. *Canal Oil Co. v National Oil Co.,* 19 Cal App 2d 524)". In the instant case, the third-party

defendant's request for an adjournment was timely made after she was apprised of the court's inclination to permit the interposition of the defective seat belt issue against her at a unitary trial. Moreover, the procurement of a seat belt expert to testify on behalf of the third-party defendant was absolutely essential to her presentation of a proper defense on the claim for contribution, since the theory of the case, as submitted to the jury, was that the third-party defendant could be subjected to liability for her negligent failure to provide the plaintiff with an operable seat belt. Under these circumstances, the interests of justice required that the third-party defendant be granted a brief adjournment of the trial in order to prepare a defense to this newly interjected theory of liability based on previously unpleaded facts (cf. *Ali v Ali,* 60 AD2d 615, 616; CPLR 4402).

Fundamental to the proper disposition of this case on remittal will be the correction of Trial Term's charge with respect to the seat belt defense interposed by the defendants third-party plaintiffs, for, after instructing the jury, *inter alia,* to apportion liability for the happening of the accident between the defendants third-party plaintiffs and Filachowski, the court then asked that body to determine (1) whether the third-party defendant's "negligence in failing to furnish the plaintiff with an [operable] seat belt [was a] proximate cause of any, all or part of the injuries sustained by the plaintiff", (2) whether the "plaintiff [was] negligent in riding in the front passenger seat of [the third-party defendant's] car" (i.e., the seat without a working seat belt), (3) whether the "plaintiff's negligence" was a "proximate cause of any, all or part of her injuries", and (4) "the portion [as a per cent] of the total responsibility for the injuries sustained by the plaintiff [which is] attributable to the negligence of such parties [namely, the plaintiff, the defendants third-party plaintiffs, and the third-party defendant] as you find to have been negligent". The court then went on to state: "If you have found that one of the parties listed below was not negligent, then the percentage which should be filled in is zero. Remember that all the percentages, when added together, must equal 100 percent. In answering this question, you are to consider the *totality* of the circumstances and such negligence as you find to have occurred either in *causing the collision* or in *causing* any, all or part of *the ensuing injuries*" (emphasis added).

In so instructing the jury, the court departed from the well-established rule of *Spier v Barker* (35 NY2d 444) to the effect that the nonuse of an available seat belt may be considered solely in mitigation of the plaintiff's damages, and, in effect,

permitted the jury to apportion liability twice, once on the issue of the liability for causing the collision (which assessment did not include any consideration of the plaintiff's conduct), and once on the issue of liability for producing the plaintiff's injuries. Moreover, under the charge, as delivered, we have no way of determining the precise amount of damages which the jury found was attributable to the failure to wear a seat belt (cf. PJI 2:87.1 [Supp]), since an element of those damages could conceivably have been charged against the third-party defendant.

The case at bar clearly does not fall within the limited exception recognized by the Court of Appeals in *Spier v Barker* (*supra,* p 451, n 3) where "the failure to wear a seat belt is an alleged *cause* of the accident" (emphasis supplied; see, also, *Curry v Moser,* 89 AD2d 1), nor are we confronted with a situation such as that which confronted the Appellate Division, Third Department, in *McMahon v Butler* (73 AD2d 197), i.e., where the vehicle in which the plaintiff had been riding as a passenger was not equipped with *any* required seat belts (see Vehicle and Traffic Law, § 383, subd 1). Moreover, it appears on this record that we are not here confronted with a situation in which there were *no* working seat belts available in the vehicle (cf. *Mc Mahon v Butler, supra*), nor one in which it was the driver who possessed the inoperable seat belt.

In this regard, we note that Trial Term's charge regarding "the plaintiff's negligence in riding in the front passenger seat" was the functional equivalent, under the facts of this case, of the "nonuse of an available seat belt" described in *Spier v Barker* (35 NY2d 444, 449, *supra*), as the plaintiff knew prior to entering the vehicle that the seat belt provided for the front seat passenger was not working and that there were other seat belts available for her use.[3] Accordingly, while we would not agree that the inoperable seat belt was "available" for the plaintiff's use under *Spier v Barker* (*supra,* p 449, n 2), we are compelled to conclude that where, as here, a functioning seat belt is to be found at an unoccupied seating position, and there is no indication that the passenger could not occupy that seating position, the voluntary decision to sit in a seat where, to the passenger's

---

**3.** In view of the foregoing, we reject plaintiff's contention that so much of the charge as related to her alleged negligent decision to ride in the front passenger seat went beyond the scope of the defendants third-party plaintiffs' answer and, therefore, could not be considered on the issue of her failure to mitigate damages. The second affirmative defense in that answer specifically alleges that the plaintiff's damages "were aggravated and enhanced" by her failure "to make use of seat belts in the car [she] occupied". The foregoing verbiage is sufficiently broad, in our view, to encompass the claim asserted herein.

knowledge, the seat belt is not working constitutes a failure on his or her part to use an available seat belt, and may be properly considered in mitigation of damages (cf. *Penzell v State of New York,* 120 Misc 2d 600, 607-608). As the Court of Appeals noted in *Spier v Barker* (*supra,* p 452), the:

"seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages *prior* to the accident. Highway safety has become a national concern; we are told to drive defensively and to 'watch out for the other driver'. When an automobile occupant may readily protect himself, at least partially, from the consequences of a collision, we think that the burden of buckling an available seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity.

"At this juncture, there can be no doubt whatsoever as to the efficiency of the automobile seat belt in preventing injuries. Simply stated, '[t]he seat belt, properly installed *and properly worn,* still offers the single best protection available to the automotive occupant exposed to an impact.' (Snyder, Seat Belt as a Cause of Injury, 53 Marq. L. Rev. 211). Furthermore, though it has been repeatedly suggested that the seat belt itself causes injury, to date the device has never been shown to worsen an injury, but, on the contrary, has prevented more serious ones (p. 213). The studies on the subject overwhelmingly indicate that the seat belt fulfills its primary purpose of restraining the automobile occupant during and immediately after the initial impact; in so doing, it significantly reduces the likelihood of ejection and frequently prevents 'the second collision' of the occupant with the interior portion of the vehicle".

Analogously, it is our present belief that the minimal effort required of a passenger to avoid sitting where the seat belt is known to be inoperable prior to entry is so slight in terms of its inconvenience and, perhaps, social discomfort, that the failure to do so may be regarded by the jury as a failure to use an available seat belt. Accordingly, if a plaintiff offers proof of a defective seat belt in response to a properly pleaded and proved seat belt defense, it remains open to the defendant to prove that there was, to the plaintiff's knowledge, an unoccupied seating position which was equipped with an operable seat belt. Moreover, in the absence of proof to the contrary, it should be presumed that all of the seat belts with which a vehicle has been equipped are both operable and available. In short, the case at bar is not to be distinguished from *Spier v Barker* (*supra*) on this basis.

Although not technically necessary to our determination herein, we note our agreement with Trial Term's decision to charge subdivision 1 of section 383 of the Vehicle and Traffic Law once it had decided (erroneously in our opinion) to permit the third-party plaintiffs to assert the defective seat belt issue in the third-party action, and reject the position that the failure to provide an operable seat belt can only be held to constitute common-law negligence. Section 383 of the Vehicle and Traffic Law pertinently provides as follows:

"§ 383. Safety belts and anchorage assemblies

"1. Safety belts required. No motor vehicle shall be sold or registered in this state and no motor vehicle registered in this state shall be *operated* in this state unless such vehicle is equipped with safety belts approved by and conforming to standards established by the commissioner as follows * * *

"(c) A motor vehicle manufactured or assembled on or after January first, nineteen hundred sixty-eight, at least one safety belt for each passenger seat position * * *

"5. Regulations. The Commissioner shall establish by regulation standards for safety belts, safety belt anchorage assemblies, and the installation of safety belts in motor vehicles. The commissioner may also by regulation exclude certain motor vehicles or types of motor vehicles from the requirements of this section. The commissioner may prescribe the method of securing approval of safety belts" (emphasis added).

The regulations which have been promulgated by the Commissioner of Motor Vehicles provide, *inter alia,* that "[e]very seat safety belt and every shoulder harness safety belt shall comply in all respects with Federal motor vehicle safety standards 208, 209 and 210 (49 CFR 571.208, 571.209 and 571.210), as they exist on the day such restraining device is manufactured", and that the foregoing shall apply "to both original equipment and replacement equipment" (15 NYCRR 49.2 [b]). With particular relevance to this case, the above-referenced Federal regulations further provide that the "buckle latch * * * shall not fail, nor * * * wear to an extent that normal latching and unlatching is impaired" (49 CFR 571.209 [S4.3] [g]), which was precisely the problem affecting the seat belt mechanism in the Filachowski automobile.

From even a casual reading of the above-quoted portions of section 383 of the Vehicle and Traffic Law, it is abundantly clear that one of the legislative purposes underlying its enactment was to proscribe, *inter alia,* the operation of vehicles of the appropriate year which are not equipped with the mandated

safety belts (see *McMahon v Butler,* 73 AD2d 197, 199, *supra*), and, by a parity of reasoning, the operation of said vehicles with seat belts which do not conform to the Commissioner's regulations because they are inoperable. Hence, no error was committed in instructing the jury that the failure (if proven) "to furnish the plaintiff with an *operational* seat belt" (emphasis added) constituted a violation of this statute, or that a violation of this statute would constitute negligence as a matter of law (*McMahon v Butler,* 73 AD2d 197, 199, *supra;* PJI 2:26; but see PJI 2:27; *Aranzullo v Seidell,* 96 AD2d 1048). In the procedural posture of the instant case, however, this entire issue will become academic upon the retrial, since we have already determined that the plaintiff's decision to occupy the seat with the inoperable seat belt is comparable, under the facts herein, to the failure to use an available seat belt decried in *Spier v Barker* (35 NY2d 444, *supra*). Accordingly, since on the present state of the record, the plaintiff's verdict will automatically be reduced by the amount of damages, if any, which the jury finds attributable to her failure to use an available seat belt, there will be no recovery for such "second collision" injuries, and, thus, no basis upon which the defendants may seek contribution and/or indemnification from the third-party defendant owing to the latter's alleged failure to supply the plaintiff with an operable seat belt. In fact, to permit such an apportionment under the facts of this case would be to grant the defendants greater protection than that envisioned by the Court of Appeals in *Spier,* as they will be permitted to deduct from the plaintiff's recovery the amount of her avoidable damages through proof of their seat belt defense. To then permit them to proceed further and recover back from the third-party defendant a part or all of these avoidable damages for which they will never be subjected to liability would, in our view, constitute a windfall. Whether the result might have been different had the plaintiff proceeded jointly against the MSBA and Filachowski, we need not now determine.

Consistent with the above observations, the retrial of this action should proceed on a bifurcated basis (22 NYCRR 699.14), as there is not, in the final analysis, such an inextricable relationship between liability and damages as to require a unitary trial (cf. *Curry v Moser,* 89 AD2d 1, *supra*). The liability issue should be tried first, and the jury instructed to apportion liability between those parties whose negligence they find to have been a proximate cause of the collision. Then, the issue of damages should be tried, and the jury instructed to separately determine (1) the total amount of the plaintiff's damages and (2) the amount, if any, which was attributable to her failure to use

an available seat belt (see *Frozzitta v Incorporated Vil. of Freeport,* 57 AD2d 827).

An appropriate judgment may then be entered.[4]

We pass upon no further issues.

Accordingly, the judgment appealed from should be reversed, on the law and as a matter of discretion in the interest of justice, and action should be remitted for a new trial on the issue of damages between all of the parties except third-party defendant Demetrious Papazis, with costs to abide the event.

O'CONNOR, BOYERS and LAWRENCE, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered March 8, 1983, reversed, on the law and as a matter of discretion, and matter remitted to the Supreme Court, Nassau County, for a new trial in accordance with the opinion herewith, between all parties except the third-party defendant Demetrious Papazis, with costs to abide the event. The third-party action is severed as to said third-party defendant Papazis and the third-party complaint as to him, the cross claim of the third-party defendant Filachowski, and the cross claim and counterclaim asserted in his answer are dismissed.

---

4. In ruling as we do, we express some reluctance in following the mechanical rule set forth in *Spier v Barker* (35 NY2d 444), which effectively imposes 100% liability upon an unbelted plaintiff for injuries sustained as a result of his or her failure to wear a seat belt, notwithstanding the fact that he or she may have been blameless in causing the accident in the first instance. Thus, in the case, e.g., of an unbelted passenger who is sitting in a vehicle which is lawfully stopped at a traffic signal, it is theoretically possible to recover nothing even though the vehicle was struck in the rear by a speeding, intoxicated driver. Juries, of course, have shown a certain disinclination to strictly apply the *Spier* rule (see, e.g., *Curry v Moser,* 89 AD2d 1), apparently sensing the injustice which can result from the failure to apportion liability for the injuries caused by the so-called "second collision" amongst its contributors, e.g., the unbelted passenger and the various operators of the vehicles involved. However, the presence of *Spier* as a controlling precedent precludes us from adopting any such rule in this case. Whether the situation will change with the recent enactment of the mandatory seat belt law (Vehicle and Traffic Law, § 1229-c, subd 3, as added by L 1984, ch 365, eff Dec. 1, 1984) is not presently before us.