The STATE of Texas HIGHWAY DEPARTMENT, Appellant,

v.

Diane HINSON et vir, Appellees.

No. 884.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 27, 1974.

Rehearing Denied Dec. 19, 1974.

James W. Wray, Jr., Dyer, Redford, Burnett, Wray & Woosley, Corpus Christi, for appellant.

Joe W. Steelman, Houston, for appellees.

## OPINION

BISSETT, Justice.

This is a suit for damages arising out of an automobile accident. Diane Hinson, plaintiff-appellee, was riding as a passenger in an automobile which collided with a Texas Highway Department dump truck. She sustained severe bodily injuries in the collision, and instituted suit against the Texas Highway Department to recover for those injuries. The trial court instructed a verdict for plaintiff on the issues of liability, and submitted the case to the jury on issues of damages only. The jury returned a verdict in favor of plaintiff for $40,545.-33. Defendant has appealed.

Appellant, among other defenses, plead that the automobile in which appellee was riding was equipped with seat belts, that appellee was negligent in not wearing them on the occasion of the accident, that such negligence was a proximate cause of her injuries, and that had she been wearing the seat belts at the time of the collision her injuries and damages would have been

eliminated or mitigated. The trial court would not allow appellant to put on any evidence relating to its seat belt defense, and ruled that there was no duty on the part of appellee to mitigate damages by wearing available seat belts. Appellant complains of that action in its first six points of error.

■ Appellant's points cannot be sustained. It was held in King Son Wong v. Carnation Company, 509 S.W.2d 385 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e., Carnation Company v. King Son Wong, Vol. 18, Texas Supreme Court Journal, p. 66), that there is no duty on the part of persons riding in an automobile to mitigate damages by wearing available seat belts. The Supreme Court, in disposing of the application for writ of error in a per curiam opinion which was handed down on November 13, 1974, said:

"We now hold that the judgment of the court of civil appeals is correct because, in our opinion, persons whose negligence did not contribute to an automobile accident should not have the damages awarded to them reduced or mitigated because of their failure to wear available seat belts. . . . "

Therefore, appellant's first six points are overruled.

At the conclusion of the evidence, and after both appellee and appellant had rested, appellee filed a motion for instructed verdict on the liability issues on the grounds that the driver of appellant's truck moved from the shoulder of the road out into the path of traffic without yielding the right of way to traffic on the road and without looking for the automobile in which appellee was riding, which constituted negligence that proximately caused the accident as a matter of law. The motion was granted. Appellant, in point seven, contends that the evidence does not prove conclusively that the negligence of appellant's truck driver was a proximate cause of the accident and appellee's injuries.

■ Since this is an instructed verdict in appellee's favor on the liability issues, we are required to review the evidence most favorable to appellant, the losing party in the trial court, to indulge against the judgment every inference that may be properly drawn from the evidence, and to disregard all conflicting evidence. Seideneck v. Cal. Bayreuther Associates, 451 S.W.2d 752 (Tex.Sup.1970); Bass v. General Motors Corporation, 491 S.W.2d 941 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.).

■ Both negligence and proximate cause may be established by circumstantial evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

The accident made the basis of this suit occurred about 2:00 p. m., April 12, 1971, in the eastbound segment of Highway 77 By-Pass south of Victoria, Texas. That segment consisted of two lanes for eastbound traffic. The collision occurred in the left lane. The right lane was being repaired by appellant. Specifically, appellant's crew was spreading pre-mixed asphalt along a stretch of some 500 to 600 feet on the righthand edge of the right lane. The work area had been coned-off with orange cones, which closed the right lane for some distance both to the west and to the east of the point of impact. Appellee estimated the distance from the beginning of the coned-off portion of the right lane east to the place of the accident to be a quarter of a mile, or more.

The automobile (Buick), as it approached the work area, was proceeding east in the right lane of the By-Pass. Appellee, who was riding in the front seat, first observed the construction work when the automobile was from one-fourth to one-half mile west of it. Mrs. Neff, the driver of the automobile, did not testify. Appellee said that Mrs. Neff changed from the right lane to the left lane when she reached the coned-off area.

Appellant's dump truck, operated by its servant Robert Braun, who was acting

within the scope and course of his employment, was dumping asphalt in the coned-off work area as the automobile approached. The truck was to the east and ahead of the automobile. Braun was driving forward on the right hand shoulder. When he reached the end of that portion of the shoulder where he had been dumping asphalt, he turned left across the right lane (the coned-off lane) and entered the left lane for eastbound traffic. The collision then took place. The automobile struck the left side of the truck on the fender under the cab door. Braun said that his speed was under, but close to, 5 miles per hour as he made his turn.

Captain Charles H. Ruble, an accident reconstruction expert called as a witness by appellant, estimated that the automobile speed at the moment of brake application was about 63 miles per hour. He stated that the driver of the automobile first reacted to the truck's turn to the left when the automobile was from 170 to 180 feet west of the point of impact. He placed the automobile in excess of 300 feet to the west of the truck when Braun first started his turn to the left. He concluded that Braun commenced his left turning movement while he was at least four seconds away from impact and that he travelled 36 feet during that interval of time. The automobile laid down 105 feet of skid marks.

Appellant contends that "there is no conclusive showing that looking in the rear view mirror was violative of the reasonable-man standard of care". It argues that a fact issue was presented for determination by the jury. Appellee claims that Braun "admitted that he did not look out of the window and admitted that he could not see road traffic by looking in the mirror", and that this shows negligence which proximately caused the accident as a matter of law. The questions that were asked Braun on cross examination relating to exactly what he did and saw at the crucial time, and his answers thereto, are:

"Q And while you were still moving, you never came to a complete stop before you turned and went on across the road?

A No sir.

Q And prior to the time that you turned and crossed into the north lane, or the left lane, did you ever observe the vehicle that you had the collision with?

A I never did see it.

Q All right. Prior to pulling into the north lane, did you look back to the west to see if any traffic was coming?

A No. I looked in my rearview mirror.

Q All right. You checked your rearview mirror and didn't see anything?

A Yes, sir, that's correct.

Q And without looking any further, you just proceeded to pull on across the road, is that right?

A Yes, sir, that's correct.

Q So you never once physically put your head out the window and looked back to the west?

A I never did look out.

Q Was your window down?

A Yes, sir, it was down.

Q All right. Of course, if your truck is on the shoulder of the road, and you look in your mirror, you wouldn't be able to see traffic that was up fairly close, would you, unless you got your head out of joint to try to look around, would you?

A Yes, sir.

Q Isn't that right?

A Yes sir.

Q And did you actually move your head around there, or just do a normal glance into the mirror?

A  I just glanced over in my mirror.

Q  Just glanced and didn't see anything. There wasn't any obstruction between your vehicle and the car that you collided with, that would have prevented your seeing them, if you had looked, was there?

A  No, sir. There was no obstruction."

It is undisputed that Braun looked into his rear view mirror only one time, which was while he was still on the right hand shoulder of the roadway. He admitted that at that place he could not, by looking in the mirror, see any road traffic in the left lane "that was up fairly close". It is further undisputed that he did not, at any time thereafter and prior to actual entry into the left lane, look for traffic in the left lane.

Appellant, in its brief, says: "It is at least inferable that he (Braun) did not see the oncoming Buick because it was not within his range of vision, that it was, in other words, some 600 feet away, as the testimony of Captain Ruble would support . . . the meticulous reconstruction of Captain Ruble, the testimony of Braun that he looked and did not see any oncoming traffic, the speed of Mrs. Hinson's (appellee) automobile, 63 miles per hour in a 'slow zone', all create a fact issue regarding Braun's negligence and proximate cause". We do not agree. There is no evidence as to Braun's range of vision when he looked into the mirror. The inference argued by plaintiff would have to be based on speculation. The only evidence relating to any distance is found in the testimony of appellant's witness, Captain Ruble. He concluded that the automobile was some 300 feet from the point of collision when Braun commenced his left turn. Braun said that he did not see the approaching automobile when he looked into his rear view mirror, but he knew that the mirror would not pick up traffic which was in close proximity of his truck at the time he started his turn.

Therefore, it can only be inferred that the automobile was in the area so close to the truck that Braun could not see it in the mirror. Had Braun actually looked out of his cab window at any time from the moment he started his left turn, he would have had an unobstructed view of vehicular traffic proceeding east in the left lane of at least 1,320 feet (1/4 mile). There is no evidence that there was anything that prevented his looking west into the left lane prior to crossing into that lane.

■  Under the facts and circumstances of this case, Braun was required to do more than merely look into the rear view mirror of the truck while he was on the shoulder of the road. The mirror reflected only a portion of the left lane. That fact was known to Braun. The automobile had the right of way. Braun was required to yield that right of way to Mrs. Neff. He did not do so. A duty existed on the part of Braun to look for traffic in the left lane immediately *before* he entered that lane to determine whether he could do so without interference or collision with vehicles approaching from the west. He breached that duty. He is not excused by simply looking into the mirror at the time and place that he did so, and then crossing the right lane and proceeding into the left lane without *further looking* into the roadway.

■■  It is well settled that for a negligent act or omission to be the proximate cause of an accident, the accident must be the natural and probable result of the particular act or omission and must have been reasonably foreseeable. Bell v. Campbell, 434 S.W.2d 117, 120 (Tex.Sup.1968). A man of ordinary prudence should have foreseen dangerous consequences if the driver of a vehicle in Braun's position did no more than was done by him. The accident would not have occurred but for the negligence of Braun. The requirements of proximate cause, foreseeability and causation, are satisfied in this case as a matter of law.

Viewing the evidence most favorably to appellant, we hold that it is conclusively established that the automobile in which plaintiff was riding had the right of way, that Braun, defendant's servant, entered the roadway when he could not do so in safety, that he failed to yield the right of way, that he failed to keep a proper lookout, and that such acts and omissions were each a proximate cause of the accident. Appellant's point seven is overruled.

The judgment of the trial court is affirmed.