Christine S. VONCH, Plaintiff-Respondent-Cross Appellant,

v.

AMERICAN STANDARD INSURANCE COMPANY,
Defendant-Appellant-Cross Respondent. †

Court of Appeals

*No. 88-1534. Submitted on briefs March 9, 1989.—Decided June 13, 1989.*

(Also reported in 442 N.W.2d 598.)

† Petition to review denied.

 

For defendant-appellant-cross respondent, there were briefs by *Terrence M. Gherty* of *Gherty and Gherty,* of Hudson.

For plaintiff-respondent-cross appellant, there was a brief by *Richard W. Johnson* of *Johnson Law Office,* of Red Wing, Minnesota.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. American Standard Insurance Company appeals a judgment that it pay its policy limits of $50,000 toward a $92,151.42 verdict in favor of Christine S. Vonch. American Standard contends that payments made by it and other insurance companies to Vonch should operate to reduce the judgment against it, that a loan receipt arrangement between Vonch and the other tort-feasor operated as a *Pierringer* release, and that the court erred by not instructing the jury that operating a motor vehicle with a BAC over .10% constitutes negligence per se and by admitting lay testimony from a police officer as to the point of impact and the absence of skid marks at the accident scene. Vonch cross-appeals, asserting that there was insufficient evidence to permit the jury to conclude that her failure to use her seatbelt rendered her 50% causally negligent with respect to her own injuries. We reject all of these contentions and affirm the judgment.

This case arises out of an automobile collision between vehicles driven by James Donley and Julie Nelson, the driver of the car in which Vonch was a passenger. Nelson and another passenger were killed in the accident and Vonch was seriously injured. Evidence at

142

trial indicated that Donley's blood alcohol level was .184% by weight shortly after the collision.

The jury found Donley 88% negligent and Nelson 12% negligent in causing the accident. The jury also found that Vonch was 50% at fault for her own injuries because of her failure to wear a seatbelt. The jury awarded Vonch damages in the amount of $184,302.83. However, this amount was reduced by one-half because of Vonch's negligence.

Following the accident, but before the trial, Vonch received various sums of money from different insurance companies. The sources, amounts, and the bases for payment are listed below:

1. AID Insurance, Vonch's automobile insurance carrier, paid $25,000 in underinsured motorist benefits.

2. American Standard Insurance Company, Nelson's automobile insurance carrier, paid $45,000 in underinsured motorist benefits.

3. Mid-Century Insurance Company, Donley's liability carrier, paid $25,000 in liability proceeds pursuant to a loan receipt arrangement between themselves and Vonch.

4. AID Insurance paid $10,000 under a personal injury protection plan purchased by Vonch as part of her auto insurance policy for lost wages.

5. AID Insurance paid $20,000 under the personal injury protection portion of Vonch's policy for medical expenses.

6. Great American Insurance Company, Vonch's health insurer under a group medical plan obtained pursuant to her employment, paid $9,201.60 for medical expenses.

As a result of the verdict, the trial court ordered American Standard, Nelson's automobile insurer, to pay $50,000, its policy limits, in liability proceeds to Vonch. American Standard first contends that some or all of the above-described payments should reduce or eliminate its obligation to make further payments to Vonch. Additionally, American Standard argues that Vonch owes it money as a result of these payments. We reject these arguments and conclude that American Standard is liable to Vonch for the $50,000.

American Standard essentially argues that the total recovery permitted under Wisconsin law for the injuries Vonch received is $92,151.42. However, she has already received $134,201.60 in benefits from various sources. Because this exceeds the amount Vonch is entitled to receive under the verdict, American Standard argues that it is excused from making any payment under the liability portion of Nelson's insurance policy.

Several of the payments Vonch received were made under insurance policies that she purchased or were provided to her by her employer as part of her compensation. Because of the collateral source rule, the benefits received as a result of insurance purchased either by Vonch or by her employer on her behalf do not affect the obligation of the tort-feasor responsible for her injuries or that tort-feasor's insurer to make payment pursuant to the verdict. *American Standard Ins. Co. v. Cleveland,* 124 Wis. 2d 258, 261–62, 369 N.W.2d 168, 171 (Ct. App. 1985). We therefore conclude that payments received from AID Insurance as part of the personal injury protection plan and medical expenses paid by her group health carrier do not affect American Standard's obligation to pay under the liability portion of its policy. Whether any or all of these carriers have subrogated

claims against Vonch is a contractual matter and depends on the content of each insurance policy. Since no subrogation claim has been raised by any of these carriers, we need not address the question of subrogation.

American Standard next argues that a loan receipt arrangement between Mid-Century Insurance Corporation, Donley, and Vonch in exchange for a $25,000 payment to Vonch in effect constitutes a *Pierringer* release under Wisconsin law, limiting American Standard's liability to 12% of $92,151.42. *See Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963). We conclude that because the terms of the loan receipt do not release Donley or his insurance carrier from liability, it does not act as a *Pierringer* release and, accordingly, does not reduce American Standard's obligation to pay the full amount of Vonch's damages up to the policy limits.

The loan receipt provides in part as follows:

> Whereas, it is the desire and intention of the parties in this Agreement that this Agreement shall in no manner affect any cause of action of any type of claim which Christine Vonch may possess by reason of the application of the rule of joint and several liability, and this Agreement shall in no manner affect any cause of action that would affect the joint and several liability of the heirs of Julie A. Nelson and American Family Insurance Company, liability carrier, and this Agreement shall in no manner affect any cause of action for underinsured or other insurance claims or causes of action which Christine Vonch may possess by reason of any insurance policies or contracts made or obtained by herself; or any other claims or causes of action not specifically enumerated herein.

NOW, THEREFORE, in consideration of Twenty Five Thousand ($25,000) Dollars as a loan repayable only in the event and to the extent of any net recovery Christine Vonch may make from Julie A. Nelson, or her insurer, American Family Insurance Company, or any other insurer providing liability coverage to Julie A. Nelson, arising out of said accident on May 5, 1984, and then only repayable if the recovery is in excess of $350,000 net to Christine Vonch after payment of attorneys fees, and all other costs and expenses to perfect said cause of action, whether recovery is taxable as costs and disbursements or not; Christine Vonch, for herself, her heirs and legal representatives, covenants and agrees:

A. To forego (as in a covenant not to sue) or refrain from asserting in any court of law any cause of action she had or now has . . ..

B. To execute such release or other documents as Farmers Insurance Group may deem necessary to free James Donley and any and all other persons, firms . . . as soon as all other litigation for recovery of damages is completed; and in any event, execute such releases or legal documents six years from the date hereof if no other litigation arising from said collision of May 5, 1984, is then pending.

C. To declare and represent that the injuries sustained by Christine Vonch may be permanent and progressive and that recovery therefrom is uncertain and indefinite; and in executing this Loan Release and Contract for Release Agreement she relies wholly on her own judgment and the judgment of her attorney regarding her belief and knowledge of the nature, extent, and duration of her injuries and she has not been influenced to any extent whatever in making this Agreement by any representations or statements regarding such injuries . . . made by James Donley

or by any person or persons representing James Donley or his liability insurer, Farmers Insurance Group.

Under the joint and several liability rule, a plaintiff may recover an entire damage award from one tort-feasor; it is then up to that tort-feasor to seek contribution from the other joint tort-feasor. *See Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Corp.,* 96 Wis. 2d 314, 330–31, 291 N.W.2d 825, 833 (1980). Generally, one tort-feasor has a right to contribution from another joint tort-feasor for any sums the first tort-feasor is obligated to pay a plaintiff in satisfaction of the second's liability. *Fleming v. Threshermen's Mut. Ins. Co.,* 131 Wis. 2d 123, 130, 388 N.W.2d 908, 911 (1986). However, a *Pierringer* release by a plaintiff of one joint tort-feasor limits a second joint tort-feasor's liability to the amount reflecting its proportion of wrongdoing; this is because the second tort-feasor's right to indemnification or contribution from the first tort-feasor has been lost due to the plaintiff's actions. *Fleming,* 131 Wis. 2d at 131, 388 N.W.2d at 911.

American Standard argues that this is also the result when the plaintiff enters into a loan receipt agreement with one of the joint tort-feasors. We disagree. This rule only applies where a release, as opposed, for example, to a covenant not to sue, is involved. *Imark Indus., Inc. v. Arthur Young & Co.,* 148 Wis. 2d 605, 436 N.W.2d 311 (1989). Under the terms of the loan receipt, Vonch did not release Mid-Century or Donley from liability. Therefore, Vonch's ability to recover the full amount of her damage award from any tort-feasor remains unaffected.

American Standard next argues that its $45,000 underinsured motorist coverage payment to Vonch under Nelson's policy should be offset against its obliga-

tion to make payment under the liability portion of the policy. The company negotiated this payment in an effort to avoid a bad faith claim. It was accompanied by a release that dictated what American Standard was receiving in exchange for the payment. The release contained the following language:

> *It is the understanding of the parties that this Release will not impair the claim of Christine S. Vonch not only in regards to the liability portion of American Standard Insurance Company's with Julie A. Nelson* but also the negligence claim against James Donley and his insurance liability carrier, Mid-Century Insurance Company, through Farmer's Insurance Group, and that American Standard Insurance Company will not assert any subrogation, indemnification or other claim against James Donley or said insurance companies to impair Christine Vonch's claim for injuries arising out of the accident above referenced. (Emphasis supplied.)

While Vonch added this language to the release prepared by American Standard, American Standard's acceptance and subsequent payment pursuant to the release constituted a contract. Thus, this issue is a matter of contract. The terms of this agreement unequivocally provided that Vonch's acceptance of the $45,000 would not impair her claim under the liability portion of the American Standard policy. American Standard essentially contracted away any claim regarding what effect its underinsured motorist coverage payment might have on its obligations under the liability portion of the policy.

American Standard next argues that the trial court erred by failing to instruct the jury that operating a motor vehicle with a blood alcohol level in excess of .10%

is a violation of a safety statute and negligence per se. The court denied the request based on its conclusion that the relationship between the blood alcohol level and the negligent operation of the motor vehicle were disputed matters properly submitted to the jury.

The trial court has wide discretion on what instructions will be given to the jury as long as the instructions given accurately reflect the law applicable to the facts of the specific case being tried and sufficiently apprise the jury of the issues that will be submitted to them for their determination. *Northwestern Nat'l Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 263–64, 400 N.W.2d 33, 41 (Ct. App. 1986). Generally, operating a motor vehicle while intoxicated is negligence per se. *See State v. Wolske,* 143 Wis. 2d 175, 182, 420 N.W.2d 60, 62 (Ct. App. 1988). However, there was a dispute as to whether Donley's intoxication caused the accident; testimony conflicted as to who entered the other's lane first. The court could have instructed the jury that if it found Donley's intoxicated state was a cause of the accident, it was negligence per se. However, this instruction was not requested in the context of a negligence per se instruction. It was not error for the court to refuse a negligence per se instruction where it is disputed as to whether Donley's intoxicated state was related to his allegedly negligent driving. Therefore, we conclude that the trial court did not abuse its discretion.

American Standard next asserts that the trial court erred by permitting officer McKinley to testify as to the point of impact and whether Nelson braked prior to impact. American Standard is essentially arguing that only experts can express such opinions and that McKinley's training and experience fall short of the expertise necessary to express such opinions as a matter of law.

However, sec. 907.01, Stats., expressly permits lay opinions to be introduced as long as those opinions are rationally based on the perception of the witness and will assist the jury in understanding the nature of the testimony or the determination of a fact in issue. Generally, the admissibility of evidence is submitted to the sound discretion of the court, and such rulings will not be overturned unless the court abused its discretion. *Liles v. Employers Mut. Ins.*, 126 Wis. 2d 492, 502, 377 N.W.2d 214, 219 (Ct. App. 1985).

McKinley, an investigating officer, testified that he did not observe any skid marks at the scene of the accident. He expressed his opinion as to the point of impact and whether Nelson attempted to stop her car by applying the brakes prior to the collision. Donley claimed at trial that the Nelson vehicle was traveling in his lane of traffic, causing him to turn into the oncoming lane of traffic to avoid the collision, so the point of impact and the location of the cars immediately before the collision were contested matters.

McKinley's testimony was lay opinion describing the scene of the accident, the location of debris, and the type and nature of damage on the vehicles, all of which he personally observed. McKinley also testified that because he did not observe any skid marks, he did not believe the Nelson vehicle attempted to brake prior to the accident. Such testimony is not within the exclusive province of an expert witness and may be the subject to the testimony of any witnesses as long as the testimony is based upon the witness's perception. American Standard contends that McKinley is not qualified to testify as to the absence of skidmarks at the accident scene. Even if such testimony is beyond the scope of lay testi-

mony, McKinley's background, training, experience, and personal observations were sufficient to permit him to identify skid marks and to testify as to their absence. The trial court did not abuse its discretion by permitting McKinley to so testify.

Vonch cross-appeals the jury's finding that she was 50% negligent for her own injuries by failing to wear a seatbelt. While Vonch frames this issue as four separate questions, the assertion of error is that there is no credible evidence supporting the jury's conclusion that Vonch's failure to wear a seatbelt was partially responsible for her injuries, warranting a 50% reduction in her damages.[1]

A jury's findings in regard to questions of fact are matters that upon review must be treated with deference by the reviewing court. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 405 N.W.2d 354 (Ct. App. 1987). It is undisputed that Vonch was not wearing her seatbelt; although she argues that the record is silent as to whether the seatbelt was operable, we find no substantial issue in this regard. The record contains evidence that wearing the seatbelt would have reduced or eliminated Vonch's fractured arm, although it is silent as to any other specific injuries that may have been averted by the use of the seatbelt. Nonetheless, the jury heard the evidence, including a detailed description of the types of injuries Vonch sustained and what caused such injuries. This is true because the jury had an opportunity to hear the evidence and observe the witnesses. We conclude that

---

[1] We note initially that even if Vonch were to prevail on her cross-appeal, it would not appear to have any practical effect on the amount she will recover from American Standard. She is already receiving $50,000, the per-person liability policy limits, from American Standard.

the record contains credible evidence to support the jury's conclusion on this issue.

*By the Court.*—Judgment affirmed.