Jerry MEYER and Lois Meyer, as Next Friends of David Lee Meyer, A Minor, and Jerry Meyer, Individually, and Lois Meyer, Individually, Appellees,

v.

CITY OF DES MOINES, Iowa, An Iowa Municipal Corporation, and Don Willis Prugh, Appellants.

No. 90–93.

Supreme Court of Iowa.

Sept. 18, 1991.

Steven C. Lussier, Asst. City Atty., Des Moines, for appellants.

Mark Godwin, Isaacson & Clarke, Des Moines, for appellees.

LAVORATO, Justice.

The defendants appeal from jury verdicts in a bifurcated trial arising out of a person-

al injury action. The defendants raise issues concerning jury instructions, sufficiency of the evidence, and taxation of costs. We reverse and remand for new trial on liability only because of errors in several instructions.

## I. Background Facts and Proceedings.

On March 23, 1987, fifteen-year-old David Lee Meyer was returning home from a friend's house on a moped. His moped collided with a garbage truck owned by the city of Des Moines. Don Willis Prugh was driving the truck.

Just before the collision, David was traveling southbound on a residential street in Des Moines. The truck was going north. Before impact, the truck passed a parked car in the northbound lane and moved into the southbound lane. The point of impact was in the southbound lane—David's lane.

Prugh saw David a distance away before the collision. David was looking down instead of ahead. The moped was going about twenty-five miles per hour, and the truck was moving slowly and braking.

David, who was not wearing a helmet, was knocked unconscious by the collision. He was admitted to a hospital in serious condition with multiple injuries including severe brain damage.

In January 1988 David's parents, on his behalf and individually, sued the city and Prugh. The Meyers alleged numerous specifications of negligence against the two defendants and sought damages from them because of the collision.

In their answer, the defendants asserted two affirmative defenses: David's negligence was the sole proximate cause of his injuries, and his damages should be reduced in proportion to his contributory fault. Later, the defendants were allowed to amend their answer to include the affirmative defense of failure to mitigate damages.

The district court, Judge George W. Bergeson, bifurcated the trial into two phases: liability and damage. This was done at the Meyers' request and over the defendants' resistance.

The liability phase of the trial was heard by a jury which found David to be fifty percent at fault and the defendants fifty percent at fault. Judge Theodore H. Miller, who presided at this phase of the trial, overruled the defendants' posttrial motions. In those motions the defendants claimed that the evidence was not sufficient to support the jury's apportionment of fault and that certain jury instructions were erroneous.

The defendants appealed. This court treated the appeal as interlocutory and dismissed it. *See* Iowa R.App.P. 2.

Judge Rodney Ryan presided at the damage phase of the trial, which was also heard by a jury. Pursuant to the jury's special verdict answers, Judge Ryan entered judgment for the Meyers and against the defendants in the amount of $136,500. Judge Ryan overruled the defendants' posttrial motions. The judge also overruled the defendants' application for retaxation of court costs.

The defendants appealed, raising numerous issues which we consider in the following order.

## II. Jury Instructions.

### A. *Iowa Code section 321.275(4): Full use of a lane.*

■ During the liability phase, Judge Miller instructed the jury in Instruction No. 8 on the specifications of negligence alleged by the Meyers. Specification 3 stated: "In depriving the plaintiff David Lee Meyer of his full lane of travel."

In Instruction No. 17 the judge expanded on this specification: "A motorized vehicle shall not be operated in any manner so as to deprive a motorized bicycle (moped) operator of the full use of a lane."

These instructions are based on Iowa Code section 321.275(4) (1987), which provides:

Persons shall not operate motorcycles or motorized bicycles more than two abreast in a single lane. Except for persons operating such vehicles two abreast, a motor vehicle shall not be operated in a manner depriving a motorcycle or motor-

ized bicycle operator of the full use of a lane. A motorcycle or motorized bicycle shall not be operated between lanes of traffic or between adjacent lines or rows of vehicles. The operator of a motorcycle or motorized bicycle shall not overtake and pass in the same lane occupied by the vehicle being overtaken unless the vehicle being overtaken is a motorcycle or motorized bicycle.

The defendants objected to instruction numbers 8 and 17 in a timely manner. The gist of their objections was simply that section 321.275(4) only applies to vehicles traveling in the same direction. And since the evidence was that the garbage truck and moped were traveling in opposite directions, the instructions should not have been given.

The defendants urged in their posttrial motions as they do here that it was prejudicial error for the court to give these instructions. For reasons that follow we agree.

The key to the defendants' contention is whether the legislature intended the statute to operate in the manner the defendants argue. That intent is not clear so we apply statutory rules of construction to ascertain it. *See* Iowa Code § 4.6. One of those rules permits us to consider "former statutory provisions, including laws upon same or similar subjects." *Id.* at 4.6(4).

Iowa Code section 321.275 became law in 1969. 1969 Iowa Acts ch. 204. Then, the statute had twelve subsections. One of those subsections tracked what is now section 321.275(4)—depriving a motorized bicycle operator of the full use of a lane. Those subsections track various sections of the Uniform Vehicle Code (UVC) (rev. ed. 1968), which were incorporated into Traffic Laws Annotated (TLA) (1979). These TLA sections are simply rules governing the operation of motorcycles. And these rules were proposed by the National Committee on Uniform Traffic Laws and Ordinances in 1968.

The legislature has amended section 321.-275 twice since 1969: in 1976 and in 1980. *See* 1976 Iowa Acts ch. 1165 § 45; 1980 Iowa Acts ch. 1094 § 28. However, the subsection in question—321.275(4)—remained intact.

Section 321.275(4) is substantially identical to section 11–1303 of the TLA. So we consider the language of section 11–1303 and the comments to it as a persuasive authority on legislative intent. *Cf., Slager v. HWA Corp.,* 435 N.W.2d 349, 352 (Iowa 1989) (considering the Uniform Comparative Fault Act and the official comments to it as persuasive authority on legislative intent of Iowa's comparative fault statute which is patterned after the Uniform Act).

Section 11–1303 of the TLA provides:

(a) All motorcycles are entitled to full use of a lane and no motor vehicle shall be driven in such a manner as to deprive any motorcycle of the full use of a lane. This subsection shall not apply to motorcycles operated two abreast in a single lane.

(b) The operator of a motorcycle shall not overtake and pass in the same lane occupied by the vehicle being overtaken.

(c) No person shall operate a motorcycle between lanes of traffic or between adjacent lines or rows of vehicles.

(d) Motorcycles shall not be operated more than two abreast in a single lane.

(e) Subsections (b) and (c) shall not apply to police officers in the performance of their official duties.

TLA § 11–1303 at 329.

The historical note to subsection (a) of section 11–1303 explains it:

This section [11–1303] was added to the Code in 1968 to clarify rules for the proper use of roadways by motorcycles. UVC § 11–1303 (rev. ed.) (1968).

*Subsection (a)* allows motorcyclists to use the full width of a traffic lane and *cautions drivers of all other motor vehicles not to encroach upon this use by occupying space in the same lane alongside the motorcycle.* These rules supplement, for motorcyclists, the rules in UVC section 11–309(a) for driving on roadways with clearly marked lanes and UVC section 11–303 requiring passing at a safe distance to the left side of any overtaken vehicle.

*Id.* (emphasis added). The italicized language, and more specifically, the word "alongside" confirms the defendants' contention that section 321.275(4) applies to motor vehicles traveling in the *same* direction as the motorcycle and not in the opposite direction.

In our view, Iowa Code section 321.297(1)(b) is one of the rules of the road protecting moped operators from vehicles traveling in the opposite direction:

1. A vehicle shall be driven upon the right half of the roadway upon all roadways of sufficient width, except as follows:

. . . .

(b). When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute an immediate hazard.

In short, the provision requires all vehicles to be driven only on the right half of the roadway unless an obstruction makes it necessary to drive left of center. If there is such an obstruction, the driver must still yield the right of way to all vehicles which are so close as to be an immediate hazard.

The Meyers alleged a specification of negligence based on the failure to yield the right of way. And the court gave a separate instruction—No. 16—based on section 321.297(1)(b). The Meyers received all they were entitled to under this last instruction. Their theory that Prugh deprived David the use of his lane was adequately covered under Instruction No. 16.

In sum, we hold that Iowa Code section 321.275(4) applies only to vehicles traveling in the same direction. The evidence is conclusive that the vehicles here were traveling in opposite directions. Because there is no substantial evidence to support submission of Instruction No. 17 and Specification 3 of Instruction No. 8, it was prejudicial error to do so. *See Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 107 (Iowa 1986) (error to instruct on an issue having no substantial evidentiary support).

The prejudice arises because we have no way of knowing from the record whether the jury assigned fault to the defendants based on a violation of section 321.275(4).

Because our holding means this case must be retried, we should decide several other matters assigned as errors that are likely to arise again on retrial. One concerns the district court's refusal to give the defendants their requested instruction on legal excuse.

### B. *Legal excuse.*

■ Legal excuse is a doctrine by which one seeks to avoid the consequences of one's conduct by showing justification for acts that would otherwise be considered negligent. *Bangs v. Keifer*, 174 N.W.2d 372, 374 (Iowa 1970); 1 Iowa Civil Jury Instructions 600.74 (1989). Legal excuse includes (1) anything that would make it impossible to comply with the statute or ordinance; (2) anything over which the driver has no control which places the driver's motor vehicle in a position contrary to the provisions of the statute or ordinance; (3) where the driver of the motor vehicle is confronted by an emergency not of the driver's own making, and by reason of such an emergency, the driver fails to obey the statute; and (4) where a statute specifically provides an excuse or exception. *Bangs*, 174 N.W.2d at 374; 1 Iowa Civil Jury Instructions 600.74 (1989).

■ Here the defendants requested a separate instruction on legal excuse as to Prugh's alleged violation of Iowa Code section 321.297(1)(b), which we earlier set out in full. The defendants narrowed their request to excuse 1 (impossibility to comply with the statute) and excuse 4 (statutory excuse or exception).

The district court refused the request, explaining that Instruction No. 16—which it gave—adequately covered the defendants' theory of legal excuse. Instruction No. 16 was based on Iowa Code section 321.297, which we earlier set out in full. The instruction provided:

A vehicle shall be driven on the right half of the road on all roads of sufficient width, except as follows:

1. When an obstruction makes it necessary to drive to the left of the center of the road. Any person doing so shall yield the right-of-way to all vehicles traveling in the opposite direction upon the open portion of the road within a distance which is an imminent danger.

A parked car may constitute an "obstruction" under this instruction.

A violation of this law is negligence.

The defendants concede Instruction No. 16 adequately covered one of their two theories of legal excuse: the statutory exception excuse. However, the defendants complain because they think the instruction did not cover their "impossibility" theory. We think the defendants were not entitled to an instruction on their "impossibility" theory of legal excuse.

This court has said that "impossible" as used in the legal excuse doctrine "should not be given a narrow, literal construction." *Sylvia v. Pennock*, 253 Iowa 779, 784, 113 N.W.2d 749, 752–53 (1962). "Impossible" was construed to mean, for these purposes, "not reasonably practicable." *Id.* at 784, 113 N.W.2d at 753.

The defendants contend that the jury could find that David was looking down and veering to the left in the direction of the garbage truck. Given the size of the truck and David's actions just before the collision, the defendants argue that the jury could have found that Prugh's compliance with section 321.297(1) was not reasonably practicable.

Because the moped veered to the left does not in our view provide a legal excuse based on impossibility. Although this evidence may tend to excuse a collision with the moped, that is not what the defendants must show. They must show facts tending to excuse the lane violation. We fail to see how any maneuvering of the moped in its *own* lane could have made it impossible for the truck to stay in its own lane.

C. *Failure to mitigate damages: non-use of helmet.*

█ Another error the defendants assign that may arise on retrial concerns Instruction No. 9 given in the damage phase. The instruction provides:

A party is required to exercise reasonable care for their own safety. This means that if, in the exercise of ordinary care under the circumstances, a party could have taken some particular action to avoid an injury, then they are under a duty to take such action.

In this case defendants claim that plaintiff David Lee Meyer unreasonably failed to take action to avoid an injury because he failed to wear a helmet while operating his moped.

You are instructed that there is no common law or statutory duty to wear a helmet.

The court gave this instruction because there was some expert testimony about enhancement of head injuries due to a failure to wear a helmet.

Whether a moped or motorcycle operator has a duty to wear a helmet is an issue of first impression for us. Though there are several decisions outside of Iowa involving failure to wear a helmet, most deal with the analogous issue of failure to use a seat belt.

Generally, evidence of nonuse of a helmet or seat belt has no relevancy on the issue of liability. This simply means that rarely will a failure to use such protective devices contribute to the cause of an accident. *Halvorson v. Voeller*, 336 N.W.2d 118, 119 (N.D.1983); *but see Curry v. Moser*, 89 A.D.2d 1, 6–8, 454 N.Y.S.2d 311, 315 (1982) (plaintiff's failure to use available seat belt could be considered as evidence of comparative negligence where car door opened and plaintiff fell out). Failure to use a helmet or seat belt may, however, be a contributing cause to the injuries sustained and so may be relevant to the issue of damages. *Halvorson*, 336 N.W.2d at 119; *Helmetless Motorcyclists—Easy Riders Facing Hard Facts: The Rise of the "Motorcycle Helmet Defense"*, 41 Ohio St. L.J. 233 (1980); Note, *The Seat Belt Defense: A Comprehensive Guide for the*

*Trial Lawyer and Suggested Approach for the Courts,* 56 Notre Dame L.Rev. 272 (1980).

No Iowa statute requires the use of a helmet so we are left to decide whether there is a common law duty. Most courts that have faced the issue—whether in the context of helmets or seat belts—have decided there is no such duty. This has been

the case whether contributory negligence as a complete bar to recovery, or comparative fault, or comparative negligence is the controlling law.[1]

Other courts have allowed evidence of nonuse on the question of damages. Although these courts are in the minority, their numbers are growing.[2]

1. *See, e.g., Cheatham v. Thurston Motor Lines,* 654 F.Supp. 216, 217 (S.D.Ohio 1986) (seat belt) (construing Tennessee statute as barring nonuse evidence on liability and damages); *Britton v. Doehring,* 286 Ala. 498, 504, 242 So.2d 666, 671 (1970) (seat belt) (nonuse inadmissible on mitigation of damages); *Dare v. Sobule,* 674 P.2d 960, 962–63 (Colo.1984) (helmet) (nonuse inadmissible on contributory negligence and mitigation of damages under comparative fault statute); *Clark v. State,* 28 Conn.Sup. 398, 402, 264 A.2d 366, 368 (1970) (seat belt) ("[U]nder ordinary circumstances, failure to fasten a seat belt does not bar an action or mitigate damages."); *Lipscomb v. Diamiani,* 226 A.2d 914, 916 (Del.Super.1967) (seat belt) (refused to recognize "seat belt" defense and decided to leave matter to legislature); *McCord v. Green,* 362 A.2d 720, 725–26 (D.C.App.1976) (seat belt) (nonuse inadmissible on contributory negligence and mitigation of damages); *Quick v. Crane,* 111 Idaho 759, 780–81, 727 P.2d 1187, 1208–09 (1986) (seat belt) (nonuse inadmissible on contributory negligence and mitigation of damages under comparative fault); *Clarkson v. Wright,* 108 Ill.2d 129, 130–35, 90 Ill.Dec. 950, 951–52, 483 N.E.2d 268, 269–70 (1985) (seat belt) (nonuse inadmissible on question of liability or damages); *Hukill v. Di Gregorio,* 136 Ill. App.3d 1066, 1067–68, 92 Ill.Dec. 64, 65, 484 N.E.2d 795, 796 (1985) (helmet) (nonuse inadmissible on liability or damages under comparative fault; relying on *Clarkson v. Wright*); *State v. Ingram,* 427 N.E.2d 444, 448 (Ind.1981) (seat belt) (nonuse inadmissible on mitigation of damages) (court refused to judicially mandate use of seat belts absent clear mandate from legislature); *Watkins v. Hartsock,* 245 Kan. 756, 757–61, 783 P.2d 1293, 1295–96 (1989) (seat belt) (under comparative negligence doctrine, "[t]here is no duty to use a seat belt under the common law standard of due care or in order to mitigate damages"); *Bond v. Jack,* 387 So.2d 613, 616 (La.App.1980) (helmet) (motorcyclist not contributorily negligent in failing to wear safety helmet) *aff'd,* 407 So.2d 401 (La.1981); *Rogers v. Frush,* 257 Md. 233, 240–44, 262 A.2d 549, 553–54 (1970) (helmet) (nonuse inadmissible on liability and damages); *Cierpisz v. Single-ton,* 247 Md. 215, 225–26, 230 A.2d 629, 635 (1967) (seat belt) (nonuse inadmissible on liability but no holding as to damages); *Burgstahler v. Fox,* 290 Minn. 495, 496, 186 N.W.2d 182, 183 (1971) (helmet) (nonuse inadmissible), *but see Northway v. Madsen,* 390 N.W.2d 435, 436

(Minn.App.1986) (helmet) (instruction on mitigation of damages because there was no objection to it); *D.W. Boutwell Butane Co. v. Smith,* 244 So.2d 11, 12 (Miss.1971) (seat belt) (under comparative negligence court refused to "lay down a rule that the failure to use [seat belts] is negligence"); *Miller v. Haynes,* 454 S.W.2d 293, 301 (Mo.App.1970) (seat belt) (nonuse inadmissible to show lack of due care) ("such a matter is properly for the legislature"); *Kopischke v. First Continental Corp.,* 187 Mont. 471, 498–500, 610 P.2d 668, 683 (1980) (seat belt) (nonuse inadmissible on liability under comparative negligence) (decision whether nonuse is admissible is for legislature); *Welsh v. Anderson,* 228 Neb. 79, 81–84, 421 N.W.2d 426, 428–29 (1988) (seat belt) (nonuse inadmissible on mitigation of damages under comparative fault statute); *Thomas v. Henson,* 102 N.M. 326, 327, 695 P.2d 476, 477 (1985) (seat belt) (nonuse inadmissible on mitigation of damages) ("However, we believe that the creation of a "seat belt" defense is a matter for the legislature, not for the judiciary."); *Hagwood v. Odom,* 88 N.C.App. 513, 514–16, 364 S.E.2d 190, 191–92 (1988) (seat belt) (nonuse inadmissible on liability or damages relying on *Miller v. Miller,* 273 N.C. 228, 160 S.E.2d 65 (1968)); *Vogel v. Wells,* 57 Ohio St.3d 91, 94–96, 566 N.E.2d 154, 158–59 (1991) (seat belt) (no common law duty to wear seat belt; evidence of nonuse inadmissible on liability and damages under comparative negligence, finding persuasive analysis in *Schaeffer v. Burdette,* 33 Ohio Misc.2d 12, 14–15, 514 N.E.2d 952, 955 (1986)); *State Highway Dep't v. Hinson,* 517 S.W.2d 308, 310 (Tex.Civ.App.1974) (seat belt) (nonuse inadmissible in mitigation of damages, relying on *King Son Wong v. Carnation Co.,* 509 S.W.2d 385, 387 (Tex.Civ.App.1974) which affirmed by Texas Supreme Court by *per curiam* opinion); *Whitehead v. American Motors Sales Corp.,* 801 P.2d 920, 928 (Utah 1990) (seat belt) (nonuse inadmissible on liability and damages under comparative fault); *Amend v. Bell,* 89 Wash.2d 124, 132–34, 570 P.2d 138, 143–44 (1977) (seat belt) (nonuse inadmissible on liability and damages under comparative negligence); *Wright v. Hanley,* 387 S.E.2d 801, 803–04 (W.Va. 1989) (seat belt) (nonuse inadmissible on liability and damages under comparative fault) (deferred to legislature on the issue).

2. *See, e.g., Smith v. Goodyear Tire & Rubber Co.,* 600 F.Supp. 1561, 1563–64 (D.Vt.1985) (in absence of statute nonuse is evidence of negligence and not negligence per se under compara-

Courts that have refused to find a common law duty to use seat belts or wear a helmet have relied on a variety of reasons. One court has summarized some of these reasons:

First, a defendant should not diminish the consequences of his negligence by the failure of the injured party to anticipate defendant's negligence in causing the accident itself. Second, a defense premised on an injured party's failure to wear a protective helmet would result in a windfall to tortfeasors who pay only partially for the harm their negligence caused. Third, allowing the defense would lead to a veritable battle of experts as to what injuries would have or have not been avoided had the plaintiff been wearing a helmet.

*Dare v. Sobule,* 674 P.2d 960, 963 (Colo. 1984) (citations omitted).

Other courts have declined to find a common law duty because of the way courts have historically used the doctrine of mitigation of damages, sometimes called the doctrine of avoidable consequences. These courts say the doctrine comes into play only *after* the negligent act of the defendant. The nonuse of a helmet or a seat belt, of course, occurs *before* the defendant's allegedly negligent act. So the nonuse is not consistent with any burden on the plaintiff to minimize damages. *See, e.g., McCord v. Green,* 362 A.2d 720, 725 (D.C.App.1976); *State v. Ingram,* 427 N.E.2d 444, 448 (Ind.1981); *Welsh v. Anderson,* 228 Neb. 79, 83–84, 421 N.W.2d 426, 429 (1988); *Hagwood v. Odom,* 88

tive negligence); *Hutchins v. Schwartz,* 724 P.2d 1194, 1199 (Alaska 1986) (seat belt) (nonuse inadmissible under comparative negligence to reduce damages—one factor to consider in apportioning damages) (refusal to defer to legislature on the issue); *Law v. Superior Court,* 157 Ariz. 147, 154–55, 755 P.2d 1135, 1142–43 (1988) (seat belt) (overruled prior rule that evidence of nonuse was inadmissible on liability and damages) (holding that comparative fault statute modifies doctrine of avoidable consequences); *Warfel v. Cheney,* 157 Ariz. 424, 427, 758 P.2d 1326, 1329 (Ct.App.1988) (helmet) (applied prospectively principles of *Law* to helmet cases); *Insurance Co. of N. Am. v. Pasakarnis,* 451 So.2d 447, 449, 454 (Fla.1984) (seat belt) (nonuse admissible as to damages but not on liability) (under comparative fault, trial court must first reduce total damages by percentage of plaintiff's contributory negligence and then reduce this amount by the percentage of total damages attributable to plaintiff's failure to wear seat belt); *Lowe v. Estate Motors Ltd.,* 428 Mich. 439, 453–55, 410 N.W.2d 706, 712 (1987) (seat belt) (under comparative negligence, nonuse admissible on defense of comparative negligence); *Dunn v. Durso,* 219 N.J.Super 383, 397–402, 530 A.2d 387, 395–97 (1986) (seat belt) (recognizes common law duty to wear seat belt) (under comparative negligence, jury determines what percentage of the damages was attributable to nonuse of seat belt); *Di Mauro v. Metropolitan Suburban Bus Auth.,* 105 A.D.2d 236, 242–44, 483 N.Y.S.2d 383, 390 (1984) (seat belt) (under comparative fault, nonuse may be considered solely in mitigation of damages and not on liability); *Curry v. Moser,* 89 A.D.2d 1, 8–9, 454 N.Y.S.2d 311, 316 (1982) (seat belt) (plaintiff fell out of car because she was not wearing seat belt; jury could consider nonuse in liability and if they found against plaintiff they could not consider

nonuse in mitigation of damages); *Spier v. Barker,* 35 N.Y.2d 444, 450, 323 N.E.2d 164, 167, 363 N.Y.S.2d 916, 920 (1974) (seat belt) (nonuse does not constitute negligence per se but jury can consider nonuse in mitigation of damages); *Dean v. Holland,* 76 Misc.2d 517, 518–19, 350 N.Y.S.2d 859, 861–62 (1973) (helmet) (nonuse may be proximate cause of an injury and jury may apportion damages provided expert testifies some or all of injury would not have occurred had helmet been worn); *Halvorson v. Voeller,* 336 N.W.2d 118, 119, 122 (N.D.1983) (helmet) (under comparative negligence nonuse inadmissible on liability but admissible on damages) (court believed helmet defense was not exclusively a matter for legislature); *Madaris v. State Highway Div.,* 80 Or.App. 662, 662–63, 667–68, 723 P.2d 1054, 1055, 1057 (1986) (seat belt) (nonuse limited to mitigation of damages but cannot be considered as fault under comparative fault); *Dahl v. BMW,* 304 Or. 558, 568, 748 P.2d 77, 83 (1987) (seat belt) (holding *contra* to *Madaris:* nonuse is considered for fault purposes); *Stouffer v. Dep't of Transp.,* 127 Pa. Commw. 610, 615–17, 562 A.2d 922, 925 (1989) (seat belt) (recognizes duty to wear seat belt) (statute passed after accident barring nonuse evidence); *Sams v. Sams,* 247 S.C. 467, 469–71, 148 S.E.2d 154, 155 (1966) (seat belt) (nonuse should be considered an issue of contributory negligence); *Foley v. City of West Allis,* 113 Wis.2d 475, 478–80, 335 N.W.2d 824, 826 (1983) (seat belt) (under comparative negligence, nonuse is not used to determine party's contributory negligence but should be used only to reduce the amount of damages recoverable so nonuse is not included in fault determination); *Vonch v. American Std. Ins. Co.,* 151 Wis.2d 138, 150–52, 442 N.W.2d 598, 603 (Ct.App.1989) (seat belt) (applying *Foley* principles to reduce damages).

N.C.App. 513, 516–17, 364 S.E.2d 190, 192 (1988).

Finally, courts have declined to find a common law duty because the legislature has not mandated helmet or seat belt use. According to these courts, the decision whether to mandate use of helmets or seat belts is one of policy and best left to the legislature. *See, e.g., Clarkson v. Wright,* 108 Ill.2d 129, 132–35, 90 Ill.Dec. 950, 952, 483 N.E.2d 268, 270 (1985); *Kopischke v. First Continental Corp.,* 187 Mont. 471, 498–500, 610 P.2d 668, 683 (1980); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 62 (Okla.1976).

In *Law v. Superior Court,* 157 Ariz. 147, 755 P.2d 1135 (1988), the court attempted to refute these reasons. The court noted that over a lifetime it is almost certain that a motor vehicle accident will injure the average motorist. So the court reasoned that as a matter of public policy the law must recognize the responsibility of every person to anticipate and take reasonable measures against motor vehicle accidents. *Id.* at 151–52, 755 P.2d at 1140. The court concluded that the

> [r]ejection of the seat belt defense can no longer be based on the antediluvian doctrine that one need not anticipate the negligence of others. There is nothing to anticipate; the negligence of motorists is omnipresent.

*Id.*

The court then turned its focus to the duty concept and concluded it was incorrect to conceptualize the seat belt defense in terms of duty. It saw duty as the obligation to use care to avoid endangering others. In contrast, it saw nonuse of a seat belt not as "a failure to use care to avoid endangering others" but as "part of the related obligation to conduct oneself reasonably to minimize damages and avoid foreseeable harm to oneself." *Id.* at 153, 755 P.2d at 1141.

From that reasoning the court proceeded to challenge the proposition that the mitigation doctrine applies only to postaccident conduct and is inapplicable to events preceding the accident—"a time when plaintiffs supposedly had a right to assume that others would not act negligently." *Id.*

The court believed that the common law concept of mitigation of damages or avoidable consequences has been modified by comparative fault which applies that doctrine to preaccident conduct. *Id.*

In support of its belief, the court noted that section 1(b) of the Uniform Comparative Fault Act (UCFA), 12 U.L.A. 39–40 (Supp.1987) defined "fault" to include, among other things, "unreasonable failure to avoid an injury or to mitigate damages." The court also noted that this definition provided that "[l]egal requirements of causal relation apply both to fault as the basis for *liability* and to *contributory fault.*" *Id.* (emphasis added). The court pointed to a significant example in the official comment to section 1(b) of the UCFA:

> As stated in the official comment to the UCFA, negligent failure to use a seat belt would reduce damages solely for those injuries directly attributable to the lack of seat belt restraint. Thus, as far as the calculation of damages is concerned, the comparative negligence statutes apply the doctrine of avoidable consequences to preaccident conduct.

*Id.*

In short, the court believed that

> [a]t least under the comparative fault statute, each person is under an obligation to act reasonably to minimize foreseeable injuries and damages. Thus, if a person chooses not to use an available, simple safety device, that person may be at "fault."

*Id.* at 155, 755 P.2d at 1143.

Finally, the court in *Law* took issue with the arguments that a seat belt defense would preempt the role of the legislature, would result in windfalls to tortfeasors, and would unduly complicate litigation. The court saw itself as having an obligation to participate "in the evolution of tort law so that it may reflect societal and technological changes." *Id.* at 156, 755 P.2d at 1144. This obligation, the court concluded, has "compelled it in some cases to recognize duties that further public policy and legislative objectives, even though the specifics have not been enacted by the legislature." *Id.*

As to the windfall argument, the court answered that under comparative fault the

key is a proper apportionment of damages based upon the fault of the parties. The seat belt defense would properly deny damages created or enhanced by the victim's unreasonable failure to use an available safety device. In short, "although some tortfeasors may pay less than they otherwise *would,* they will not pay less than they *should." Id.*

The court then turned to the argument that the seat belt defense would unduly complicate litigation because of the necessity of experts. The court saw this problem as "no different in principle from any legal, technological or scientific advance." *Id.* at 157, 755 P.2d at 1145.

These pro and con arguments simply underscore the difficulty a court faces in making the decision whether to recognize a "helmet" or "seat belt" defense. The history of the helmet and seat belt law in Iowa, together with our own brand of comparative fault, poses additional problems.

A helmet law was in effect in Iowa from September 1, 1975, until July 1, 1976, when it was repealed. In the past fifteen years the legislature has not seen fit to regulate helmet use for motorcycle or moped operators.

In contrast, the legislature mandated the use of seat belts in 1986. *See* 1986 Iowa Acts ch. 1009, § 2 (now codified at Iowa Code § 321.445). We upheld the constitutionality of this statute in *State v. Hartog,* 440 N.W.2d 852, 855, 859–60 (Iowa), *cert. denied,* 493 U.S. 1005, 110 S.Ct. 569, 107 L.Ed.2d 563 (1989), *reh'g denied,* 493 U.S. 1095, 110 S.Ct. 1174, 107 L.Ed.2d 1076 (1990).

One might wonder why the legislature acted in one area and not the other. Common sense tells us that a motorcyclist is more vulnerable to injury than a driver or a passenger in a car and therefore needs more protection.

Iowa has followed other states in limiting the use of evidence regarding nonuse of a seat belt. *See* Iowa Code § 321.445(4). Section 321.445(4)(a) makes evidence of such nonuse inadmissible in a civil action for damages arising prior to July 1, 1986.

In actions arising on or after July 1, 1986, nonuse shall not be considered as evidence of "fault" under Iowa Code section 668.3(1) (definition of "fault"). Iowa Code § 321.445(4)(b). But evidence of nonuse may be admitted to mitigate damages under certain conditions. The party seeking to introduce evidence of nonuse must first introduce substantial evidence that the nonuse contributed to plaintiff's injuries. Iowa Code § 321.445(4)(b)(1). And if the jury finds the nonuse did contribute to the plaintiff's injuries, the jury may reduce the plaintiff's recovery by an amount not to exceed five percent of the damages awarded *after* any reductions for comparative fault. Iowa Code § 321.445(4)(b)(2).

The five percent limitation reduces the chances of an unfair result under our comparative fault statute. Iowa Code section 668.1(1) tracks the definition of fault under the UCFA. Section 668.1(1) therefore includes "unreasonable failure to avoid or to mitigate damages" within its definition of "fault."

Under the UCFA and section 668.3(1), evidence of failure to mitigate damages is relevant on the question of liability and therefore reduces the total damages a fact finder may find a plaintiff has suffered. *See Tanberg v. Ackerman Inv. Co.,* 473 N.W.2d 193, 195 (Iowa 1991) (failure to lose weight *after* accident constituted unreasonable failure to mitigate damages and was properly assessed as "fault"); Iowa Code § 668.1(2) ("The legal requirements of cause in fact and proximate cause apply both to fault as the basis for liability and to contributory fault.").

Treating mitigation as fault makes no practical difference under the UCFA because the UCFA recognizes pure comparative fault. That means a plaintiff who is ninety-nine percent at fault can still recover.

In contrast, under Iowa Code section 668.3(1), a plaintiff who is more than fifty percent at fault cannot recover. So without the five percent limitation in section 321.445(4)(b)(2), evidence of nonuse could actually prevent an otherwise innocent plaintiff from recovering anything. *Cf.*

*Tanberg,* 473 N.W.2d at 195–96 (plaintiff failed to recover in circumstances where jury was allowed to assign as fault plaintiff's failure to lose weight as unreasonable failure to mitigate damages).

No such limitation, of course, applies to a moped operator who fails to wear a helmet. Under the present state of the law a perfectly innocent moped operator who is hit by a speeding drunk driver could conceivably recover nothing. The jury could assess more than fifty percent of the total fault to the moped operator because the operator failed to wear a helmet.

As one court wisely noted in the context of a seat belt case,

> the question of automobile safety is comprehensively considered in the Delaware statutory law. It is a vital and continuing concern to the legislature. There can be little question but that the legislative forum is a better one to explore the area than the isolated courtroom. The courts, as guardians of law, can do no greater disservice than fail to recognize the full role of the other branches of government.

*Lipscomb v. Diamiani,* 226 A.2d 914, 916 (Del.Super.1967). The helmet question certainly is of vital concern to the legislature. It has legislated in that area twice. Our discussion certainly demonstrates that there are policy decisions to make which are more properly in the domain of the legislature. For these reasons, we join those courts that have deferred to the legislature. We therefore decline to hold that there is any common law duty for a moped operator to wear a helmet.

## III. The Bifurcation Order.

Our holding on the helmet issue makes it unnecessary for us to rule on the defendants' challenge to the order bifurcating the trial. We point out, however, the danger in bifurcating a trial under our comparative fault law.

As we noted earlier, fault includes an unreasonable failure to mitigate damages. If a party asserts this element of fault in combination with an alleged fault that caused the occurrence which led to the injury, the fact finder must follow two separate chains of causation to determine the plaintiff's aggregate fault.

The first chain involves causal factors leading to the occurrence that caused the injury. So the first chain involves the liability phase of the case. The second and independent chain leads directly to damages. The second chain does not involve the occurrence that caused the injury. The second chain can only be determined by the fact finder who is to consider the damage phase of the litigation. It is therefore essential in order to combine these separate assessments of fault into a single aggregate percentage of fault that the same trier of fact consider both the liability issues and the damage issues.

Bifurcation in these circumstances would be prejudicial to the party relying on the mitigation of damages defense and would therefore constitute an abuse of discretion. *See* Iowa R.Civ.P. 186 ("In any action the court may, for convenience or to avoid prejudice, order a separate trial of any claim. ...."); *Briner v. Hyslop,* 337 N.W.2d 858, 870 (Iowa 1983) (scope of review on bifurcation is abuse of discretion).

## IV. Sufficiency of the Evidence.

Contrary to the defendants' contention, we find that there was substantial evidence to support the jury's apportionment of fault. There was substantial evidence on specifications of negligence other than Specification 3 in Instruction No. 8. The district court properly submitted the case to the jury on these specifications in the liability phase.

## V. Costs.

In the damage phase, the Meyers called two medical doctors. The district court taxed as costs against the defendants expert witness fees of $500 for each doctor. The defendants claim this was more than the limit of $150 provided in Iowa Code section 622.72. We agree.

Court costs are taxable only to the extent provided by statute. *Schark v. Gorski,* 421 N.W.2d 527, 528 (Iowa 1988). Two

statutes control here: Iowa Code section 622.69 and section 622.72.

Section 622.69 is the general statute on witness fees. It provides that

> [w]itnesses shall receive ten dollars for each full day's attendance, and five dollars for each attendance less than a full day, and mileage expenses....

Section 622.72 is a special statute relating to experts:

> Witnesses called to testify only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations and state the result thereof, shall receive *additional* compensation, to be fixed by the court, ... but *such additional compensation shall not exceed one hundred fifty dollars per day while so employed.*

(Emphasis added.)

█ Construing the two statutes together as we must, we think a reasonable construction is this: a witness called to give an expert opinion is entitled to the fee and mileage indicated in section 622.69 and in addition is entitled to a maximum of $150 per day. *See Snyder v. Iowa City*, 40 Iowa 646, 647–48 (1875) (construing predecessor to section 622.72 and holding that physicians summoned as witnesses are not entitled to *extra* compensation under the statute unless called to testify as experts).

Under our construction of section 622.72, the district court was only allowed to tax as costs as to each doctor the ordinary fee under section 622.69 and, in addition, no more than $150 under section 622.72. Taxation of costs in excess of those amounts was error.

█ The district court also taxed as costs a total of $133.50 for the Meyers' copies of three depositions. These copies were not the originals of the depositions. Two of the depositions were not introduced at trial. The other deposition was admitted but it was the original paid for by the defendants. The Meyers concede that only the costs of depositions introduced into evidence are taxable as costs. *See Woody v. Machin*, 380 N.W.2d 727, 730 (Iowa 1986);

Iowa R.Civ.P. 157. The district court erred in taxing costs for the three copies against the defendants.

We have considered all the arguments and contentions of the parties whether or not discussed. Those not discussed we reject as lacking merit.

VI. Disposition.

In the liability phase, the district court erred in giving an instruction based on Iowa Code section 321.275(4) (depriving a moped operator of the full use of a lane). Under the evidence in this case, the instruction did not apply. Because of this error, we reverse and remand for a new trial.

The defendants were not entitled to an instruction on their theory of impossibility under the legal excuse doctrine. Instruction No. 16 adequately covered the defendants' theory of legal excuse.

There was substantial evidence to support the jury's apportionment of fault on all other specifications of negligence submitted.

In the damage phase, the district court properly refused to instruct on David's failure to wear a helmet. A moped operator has no statutory duty to wear a helmet. We decline to hold that a moped operator has a common law duty to do so. We defer to the legislature on the question whether a duty to wear a helmet should be mandated.

On remand, the district court shall only try the issue of liability because there was no error in the damage phase of the trial. Upon retrial, the total amount of the plaintiffs' damages will be deemed to be the amount established by the jury in the damage phase. *Cf. Schwennen v. Abell*, 430 N.W.2d 98, 104 (Iowa 1988) (fault of injured spouse was incorrectly imputed to deprived spouse's consortium claim; new trial on deprived spouse's consortium claim ordered on liability but not on damages).

On the motion to retax costs, the district court awarded more than the expert witness fee statute allowed. And the court incorrectly taxed costs against the defendants for two depositions that were not

used at trial and for one deposition paid for by the defendants.

REVERSED AND REMANDED FOR NEW TRIAL.

All justices concur except LARSON and SNELL, JJ., who dissent.

LARSON, Justice (dissenting).

I dissent from Division II(C) regarding apportionment of fault for a plaintiff's failure to wear a helmet. While not wearing a helmet does not contribute to the cause of the accident, it certainly contributes to the injuries. This case is a good example. A motorcycle rider's decision not to wear a helmet is no different, in its effect, from a decision to operate the motorcycle itself in a negligent manner. Failure to wear a helmet should be a consideration in apportioning fault under Iowa Code chapter 668.

Despite the fact that Iowa does not have a mandatory helmet law, a person has always had the duty to act prudently with respect to his own safety. Even though the legislature has decided not to make it a crime to operate a motorcycle without a helmet, this has no bearing on the question of whether the operator is at fault for increasing the risk of his own injury. A duty to exercise care for one's own safety is well established in our common law.

SNELL, J., joins this dissent.